KIMBELL et al. v. NOEL et ux.

No. 14152.

Court of Civil Appeals of Texas. Dallas.

March 3, 1950.

Rehearing Denied March 31, 1950.

Gullett & Gullett, of Denison, Strasburger, Price, Holland, Kelton & Miller, W. M. Taylor, Jr. and Royal H. Brin, Jr., all of Dallas, for appellants.

George Hamilton and Webb & Rogers, all of Sherman, for appellees.

YOUNG, Justice.

The action below was for damages by way of personal injuries, resulting from an automobile collision on afternoon of July 8, 1948 between the car driven by Mrs. Velma Noel, appellee, and a trailer truck in charge of an employee of appellants. Upon conclusion of trial to a jury, a plaintiffs' judgment was rendered in sum of $6,651.50, which judgment is properly before this court for review.

Points of appeal relate only to manner of examination of Dr. B. T. Brown, plaintiff's medical witness, by her own counsel and to their jury argument having as a basis the same medical testimony. Specifically appellants claim errors in the record of a reversible nature in the following respects: "(1) Conduct of plaintiffs' attorneys in repeatedly referring in questions and argument to the 'precancerous' condition of Mrs. Noel, despite the rulings of the court that such matter should not be. mentioned; (2) conduct of plaintiffs' counsel in referring in argument to the policeman's report, said report having been excluded from the evidence by the court; and (3) in allowing plaintiffs' counsel to write on a blackboard before the jury the figures as to the amounts of damages he was asking the jury to find, because the same amounted to written instructions to the jury outside the record, and unsworn testimony by counsel."

All negligence issues were resolved in favor of plaintiff Mrs. Noel and, as no point is made of insufficiency of evidence, the jury questions and answers will not be detailed, or factual account of the collision. It is sufficient to say that upon impact of truck and the rear and side of the passenger car, plaintiff (of some 265 lbs. weight) was thrown against the steering wheel, the knob of which struck her on left breast and chest. Mrs. Noel testified to immediate pain and soreness in that region, of being hardly able to raise left arm or use left side the next morning, with breast where knob had struck, black and blue. She was regularly treated by Dr. Lee until his death in December, when Dr. Brown took over; the latter rendering medical attention at frequent intervals (every week to ten days) up to date of trial (April 7, 1949).

Dr. Brown testified to finding that Mrs. Noel had a "definitely diseased left breast"; a condition of fibro-adenoma, or sort of tumor, requiring surgery; that some five weeks before the trial about one-fourth of left breast containing a lump had been removed, the mixture of fatty and glandular tissue taken out being badly diseased, but proving on analysis to be noncancerous; that plaintiff's adenoma could have been caused by trauma or a blow, finding no mention in medical textbooks of cancer as primarily due to trauma. Without objection, Dr. Brown testified to a precancerous condition before the operation and to possibility of future operation on breast; that he could not now say with any degree of definiteness what her future condition would be, but that, aforesaid present condition was such as to cause her anxiety, worry, and nervousness, present and future. We now quote the particular testimony of this medical witness which is made the predicate of appellants' first point of appeal: "Q Doctor, what is the prognosis for Mrs. Noel? What do you, as a medical man, expect her future to be? (Taylor) That should be limited as to what is reasonable and probable. (Court) All right. Sustained. A I wouldn't give any definite prognosis in this case. I would

say that she should be kept under close observance, and that breast should be repeatedly examined for at least a year, and better two years, on account of the possibility of a cancer developing, although the diseased portion has, as near as possible, been removed. (Rogers) From your examination, have you found any indications, or things that you have noticed from your examination, that indicate a possible cancer condition? A I thought she had cancer when I first examined her. My diagnosis now would be a precancerous condition. (Taylor) If the court please, that is getting back, I think, from the question and the answer that the Doctor just gave, into possibilities. We object to the answer, and also to the question, for that reason. (Court) All right. Sustained. (Taylor) And ask the court to instruct the jury not to consider that. (Court) You won't consider that. * * * (Rogers) Doctor, do you know the percentage of cases of this type that develop into cancer? (Taylor) If the court please, that is speculative and also conjectural. No predicate laid for it, I don't think, neither in the evidence nor in the pleadings. (Court) Sustain the objection. * * * (Rogers) * * * Does the fact that the incision in her breast is healing have any effect upon any future cancerous condition? A No, Sir. (Taylor) I think the court sustained the objection to the cancerous part of the business, because the doctor said that it was remote, speculative, conjectural, and possibility, and we object to it for that reason. (Court) What is the form of the question? (Rogers) I asked him if the fact that the breast was healing from this operation had any effect upon any future cancerous condition that might develop. (Court) Sustain the objection."

▆▆▆ The witness had testified without objection that prior to plaintiff's operation her left breast was in a precancerous condition and that she must be kept under close observation for a year or two before he could promise her free from possibility of cancer. In the field of expert testimony perhaps no rule is more firmly grounded than that a physician may testify to his diagnosis and prognosis concerning the

physical condition of a patient under examination or treatment. 19 Tex.Jur. sec. 37, p. 56. A further statement of Dr. Brown, excluded by the trial court, was that "I thought she had cancer when I first examined her. My diagnosis now would be a precancerous condition"; and admissibility of the quoted testimony may be defended under the foregoing general rule. By such line of questioning counsel was simply seeking to elicit from this witness the likelihood of a future cancerous condition, i. e., its probability in contrast to a possibility. Be this as it may, the jury verdict is not attacked as excessive, the trial court sustaining all objections along with appropriate instructions touching the particular interrogation. In the situation thus presented, error, if any, was not so harmful as that it could not have been cured by the solicited court ruling and instruction. Davis v. Hill, Tex.Com.App., 298 S.W. 526; 36 Texas Digest, Trial, ☜133(6). These conclusions also apply to the argument complained of; in which connection and in our opinion the statement of Dr. Brown that "My diagnosis now would be a precancerous condition" was admissible testimony. It was while plaintiffs' counsel was discussing the element of mental anguish to the jury that the terms "Is it cancer" and "the diagnosis as made was precancerous," were used. The quoted references in argument are not considered objectionable; especially in view of the mentioned testimony of Dr. Brown, viz.:

"Q Is the condition you find Mrs. Noel in reasonably calculated to cause anxiety and worry— A Yes, sir.

"Q —over her physical condition at the present time? A Yes, sir.

"Q Will it be reasonably calculated to cause anxiety and worry over her physical condition in the future? A Yes, sir."

The right of an injured person to recover for comparable mental anguish and worry has long been recognized. See Southern Kansas Railway Co. of Texas v. McSwain, 55 Tex.Civ.App. 317, 118 S.W. 874, 875, where the court held: "We find no error in the court's action in * * * permitting plaintiff to testify that he suffered mental

anguish by reason, among other things, of 'the fear that blood poison might set up and prove fatal.' "

However, even if we be mistaken in the foregoing as warranting the argument thus attempted, still the court's prompt ruling of exclusion has obviated the probability of any error that might be deemed reversible. The conduct of plaintiffs' counsel here does not appear as any deliberate, persistent or reprehensible effort to bring before the jury inflammatory matter entirely outside the record. Their inquiries and argument (from their standpoint, at least) had apparent basis in the record; the factual setting being thereby distinguishable from that reflected, for example, in Texas Employers' Ins. Ass'n v. Drayton, Tex.Civ. App., 173 S.W.2d 782, syls. 5, 6, where the related matter was entirely aside from the record, and otherwise of such harmful nature as that an instruction might not cure.

■ Appellants' next point has this sequence: Officer Ross, who came on the scene just after the collision, testified at instance of defendant, having in hand a police report of the accident made at the time; the contents, however, being the subject of objection by both parties. The officer had testified on direct examination that plaintiff admitted at scene of collision to being crowded into the truck by another car (defendants' theory of the case), while a part of aforesaid written report went on to say that the truck was "backing into the curb" (plaintiffs' theory) at time of wreck. The witness had stated on cross examination that the excerpt just mentioned was in his handwriting; further questioning on the point being interrupted by objection and court ruling, and the report was thereupon excluded as hearsay.

It was to the above quoted part of the report that plaintiffs' counsel had reference in argument when objection was made thereto and sustained. Again the court ruling was curative of any possible error; and more than that, the underlying cross examination was in all respects proper both for purpose of impeachment and in support of plaintiffs' primary issue as well, i. e., that the truck was actually backing into the curb at the time. And what prejudice could have resulted here by reason of the argument, where no contention is made of insufficiency of evidence in support of the jury findings on 'liability?

■ In opening argument Mr. Rogers, counsel for plaintiffs, placed on a convenient blackboard a series of figures, the total of which in his estimation of the evidence as a whole, should be the amount of recovery under issue 34 and its six elements of damage. The bill of exception discloses that everything on the blackboard was erased before defendants' argument began. These blackboard figures, either singly or in toto, could in no sense be viewed as evidence through counsel as a witness; nor could the jury have considered them in any other light than as inferences and deductions of counsel based upon admitted testimony. In any event it is to be noted from the jury's final answer that, far from following the computations made, their assessment was less than one-half of the minimum recovery sought through the mathematics of counsel and less than one-fifth of the amount for which the action was brought.

These points of error are believed to be without merit, with the result that an affirmance of the cause is ordered.