**TEMPLE–INLAND FOREST
PRODUCTS CORPORA-
TION, Petitioner,**

v.

**Martin Reeves CARTER, Sr. and
Larry Wilson, Respondents.**

No. 97–0592.

Supreme Court of Texas.

Argued Oct. 21, 1998.

Decided April 29, 1999.

D. Allen Jones, Beaumont, for Petitioner.

James I. Potts, Beaumont, for Respondents.

Justice HECHT delivered the opinion for a unanimous Court.

The sole issue in this case is whether a person who has been exposed to asbestos but does not have an asbestos-related disease may recover damages for fear of the possibility of developing such a disease in the future. The district court granted summary judgment for the defendant on plaintiff's claims for actual and punitive damages. A divided court of appeals reversed only on the actual damages claim.[1] For reasons we explain, the district court was correct.

**I**

Temple–Inland Forest Products Corporation employed Biskamp Electric to install electric outlets and computer jacks in a laboratory at one of its paper mills. In performing the installation, two Biskamp employees, Martin Reeves Carter Sr. and Larry Wilson, drilled holes in laboratory countertops, which they did not know and were not told contained asbestos. The drilling generated dust containing asbestos fibers to which Carter and Wilson were exposed. They had no protective gear to prevent them from inhaling the dust. Carter worked on the project from four to six weeks, and Wilson worked on it about two weeks. Not until the work was almost complete did the laboratory manager warn Carter and Wilson of the asbestos, at which point they stopped work on the project. Temple–Inland then tested and decontaminated the lab.

Some eighteen months later Carter and Wilson were examined by Dr. Daniel Jenkins, to whom they had been referred by their attorney. Although Dr. Jenkins concluded that neither Carter nor Wilson had any asbestos-related disease, they sued Temple–Inland for mental anguish damages caused by its having negligently exposed them to asbestos fibers. Carter and Wilson also alleged that Temple–Inland had failed to develop a hazard communication program as required by federal regulation[2] to protect persons working on its premises.

Dr. Jenkins testified at his deposition that Wilson complained of shortness of breath on exertion, that Wilson's X-ray showed some bilateral pleural thickening, and that his pulmonary function report suggested some obstruction in the small peripheral airways. According to Dr. Jenkins, Wilson's shortness of breath and pleural thickening were possibly related to his obesity, and the pleural thickening could have been related to a history of asbestos exposure predating the Temple–Inland work. Dr. Jenkins did not attribute any of Wilson's symptoms to his exposure to asbestos on Temple–Inland's premises and agreed that that exposure was probably too recent to have resulted in any of Wilson's conditions, given the long latency period ordinarily involved in asbestos-related diseases. Carter's X-ray showed no abnormalities whatever, and his pulmonary function was close to normal. Dr. Jenkins thus concluded that Wilson and Carter suffered from no disease as a

---

1. 943 S.W.2d 221.

2. Plaintiffs cited 29 C.F.R. § 1926.59.

result of their exposure to asbestos and that they were not disabled. In their depositions Carter and Wilson reported no other symptoms.

Dr. Jenkins, however, insisted that Wilson and Carter had been injured by their exposure to asbestos and probable inhalation of asbestos fibers at the Temple–Inland lab. He estimated that the chances of their developing a disease as a result had increased from one in a million, which he estimated to be the risk that a person would ever develop a disease from asbestos exposure not occupationally related, to about one in 500,000 for the next ten or fifteen years, and as much as one in 100 over twenty or thirty years. Dr. Jenkins characterized plaintiffs' risk as a "high possibility" but not a probability.

Based on the depositions of Dr. Jenkins, Carter, Wilson, and others, Temple–Inland moved for summary judgment on the ground that Carter and Wilson had not suffered any injury for which they could recover mental anguish damages. Temple–Inland argued that plaintiffs' claims for fear of the mere possibility of developing some disease in the future amounted to nothing more than negligent infliction of emotional distress for which they could not recover under this Court's decision in *Boyles v. Kerr*.[3] Plaintiffs responded that their inhalation of asbestos fibers was a real, physical injury which could eventually lead to disease, and that they were entitled to be compensated for their anxiety over that eventuality. Temple–Inland also contended that as a matter of law it had not been grossly negligent.

The trial court granted summary judgment. The court of appeals affirmed the judgment denying punitive damages but, by a divided vote, reversed the judgment on plaintiffs' actual damage claims.[4] Relying principally on the Fifth Circuit's decision in *Watkins v. Fibreboard Corp.*[5] and the Sixth Court of Appeals' opinion in *Fibreboard Corp. v. Pool,*[6] the court concluded that "it is well established a plaintiff may recover for mental anguish based upon fear of cancer even though the evidence shows the plaintiff does not have, and in reasonable medical probability, will not have cancer, so long as there has been exposure to the causative agent and the fear is reasonable."[7] Holding that the summary judgment record did not establish that Carter's and Wilson's fears of developing asbestos-related diseases were unreasonable, the court remanded their claims for trial.[8] Chief Justice Walker dissented, stating that plaintiffs' risk of developing cancer was so low that their fears were, as a matter of law, unreasonable.[9]

We granted Temple–Inland's application for writ of error[10] and now reverse the court of appeals' judgment insofar as it reversed the district court's judgment.

## II

The summary judgment record establishes that Carter and Wilson were exposed to asbestos at Temple–Inland's lab but do not presently suffer from any asbestos-related disease, and that while their risk of developing such a disease was increased by their exposure to asbestos, that risk is still no higher than one chance in a hundred over twenty to thirty years. The issue is whether they can recover for their fear that they will someday develop such a

**3.** 855 S.W.2d 593 (Tex.1993).

**4.** 943 S.W.2d 221.

**5.** 994 F.2d 253 (5th Cir.1993) (applying Texas law).

**6.** 813 S.W.2d 658 (Tex.App.—Texarkana 1991, writ denied), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993).

**7.** 943 S.W.2d at 223.

**8.** *Id.* at 223–224.

**9.** *Id.* at 224 (Walker, C.J., dissenting).

**10.** 41 TEX. SUP.CT. J. 723 (May 8, 1998).

disease from their work at Temple–Inland's lab.

## A

 Carter and Wilson first argue that they are entitled to recover mental anguish damages even if they sustained no physical injury, as long as their fear of developing some asbestos-related disease is reasonable. This argument conflicts with our decision in *Boyles v. Kerr,* where we held that "there is no general duty not to negligently inflict emotional distress." [11] As we later explained in *City of Tyler v. Likes,* "[i]t has been established for over a century that '[a] person who is placed in peril by the negligence of another, but who escapes without injury, may not recover damages simply because he has been placed in a perilous position. Nor is mere fright the subject of damages.'" [12] Absent physical injury, the common law has not allowed recovery for negligent infliction of emotional distress except in certain specific, limited instances. [13]

There are few situations in which a claimant who is not physically injured by the defendant's breach of a duty may recover mental anguish damages. *See, e.g., Freeman v. City of Pasadena,* 744 S.W.2d 923, 923–24 (Tex.1988) (bystander recovery); *Silcott v. Oglesby,* 721 S.W.2d 290, 292 (Tex.1986) (intentional tort of child abduction); *Leyendecker & Assocs. v. Wechter,* 683 S.W.2d 369, 374 (Tex.1984) (defamation); *Billings v. Atkinson,* 489 S.W.2d 858, 860–61 (Tex. 1973) (invasion of privacy); *Stuart v. Western Union Tel. Co.,* 66 Tex. 580, 18 S.W. 351, 353 (1885) (failure of telegraph company to timely deliver death message); *Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904, 906–07 (Tex.Civ.App.— Houston [14th Dist.] 1969, writ ref'd n.r.e.) (negligent handling of corpse). [14] Whether a plaintiff can recover mental anguish damages without physical injury "depends on both the nature of the duty breached and the quality of proof offered by the plaintiff. For many breaches of legal duties, even tortious ones, the law affords no right to recover for resulting mental anguish." [15]

 Plaintiffs' claims in this case do not fall within any of the categories in which recovery has been allowed. Moreover, a landowner's tortious breach of his duty to invitees—like Temple–Inland's negligently exposing Carter and Wilson to asbestos— is not a wrong for which mental anguish is compensable absent physical injury. [16] This is true whether the landowner's duty arises from the common law or from the federal regulation invoked by Carter and Wilson in their pleadings. Accordingly, Carter and Wilson cannot recover mental anguish damages absent physical injury.

## B

 Alternatively, Carter and Wilson argue that they have been physically injured because of their exposure to asbestos fibers. Carter's and Wilson's testimony, as well as that of Dr. Jenkins, supports the inference that they inhaled asbestos fibers in the lab, and Temple–Inland has not refuted this inference. Also, Dr. Jenkins' testimony that plaintiffs were physi-

**11.** 855 S.W.2d at 597.

**12.** 962 S.W.2d 489, 500 (Tex.1997) (quoting *Gulf, C. & S.F. Ry. v. Trott,* 86 Tex. 412, 25 S.W. 419, 420 (1894), and citing RESTATEMENT (SECOND) OF TORTS § 436A (1965)).

**13.** *Boyles,* 855 S.W.2d at 597.

**14.** *Motor Express, Inc. v. Rodriguez,* 925 S.W.2d 638, 639 (Tex.1996) (per curiam); *accord, Boyles,* 855 S.W.2d at 597.

**15.** *Likes,* 962 S.W.2d at 494 (citing *Boyles,* 855 S.W.2d at 598, for "noting that mental anguish is not recoverable in an action for negligent misrepresentation").

**16.** *Motor Express,* 925 S.W.2d at 639 ("While there may be certain relationships that give rise to a duty which, if breached, would support an emotional distress award even absent proof of physical injury, *Boyles,* 855 S.W.2d at 600, the landowner-invitee relationship is not one.").

cally injured by the inhalation of asbestos is uncontradicted in the record. We therefore assume, as we must for summary judgment purposes, that Carter and Wilson were physically injured by their exposure to asbestos on Temple–Inland's premises, so that they reasonably fear developing some asbestos-related disease. The question comes to this: given that plaintiffs inhaled asbestos fibers, can they recover mental anguish damages for their increased risk and reasonable fear of possibly developing asbestos-related diseases that they do not currently have and may never have?

While the existence of physical injury is ordinarily *necessary* for recovery of mental anguish damages except in those instances already mentioned, such injury may not be *sufficient* for recovery of mental anguish damages when the injury has not produced disease, despite a reasonable fear that such disease will develop. As we recently observed in *City of Tyler v. Likes,* "[w]ithout intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." [17] This appears to be the generally accepted rule in most, if not all, American jurisdictions. The United States Supreme Court recently surveyed asbestos cases applying this rule in *Metro–North Commuter Railroad Co. v. Buckley.* [18] The issue in that case was whether a railroad worker negligently exposed to asbestos, but without symptoms of any disease, could recover damages under the Federal Employers' Liability Act (FELA) [19] for fear of developing disease in the future. FELA imposes liability for "injury", [20] which the Supreme Court has construed to mean "physical impact". [21] Because FELA's construction must be informed by common-law principles, [22] the Court examined the decisions in jurisdictions throughout the nation involving asbestos and concluded that "with only a few exceptions, [23] common-law courts have denied recovery to those who, like Buckley, are disease and symptom free." [24] The

---

17. 962 S.W.2d at 496.

18. 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997).

19. 45 U.S.C.A. §§ 51–60 (1986).

20. *Id.* § 51.

21. *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 547–548, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

22. *Id.* at 544, 114 S.Ct. 2396.

23. "We have found only three asbestos-related cases, all involving state law, that support Buckley directly. *Watkins v. Fibreboard Corp.,* 994 F.2d 253, 259 (C.A.5 1993) (Texas law) (recognizing cause of action for emotional distress based on exposures to asbestos in the absence of physical symptoms); *In re Moorenovich,* 634 F.Supp. 634 (D.Me.1986) (Maine law) (same); *Gerardi v. Nuclear Utility Services, Inc.,* 149 Misc.2d 657, 566 N.Y.S.2d 1002 (Westchester Cty.1991) (same). None of them was decided by the highest court of the relevant State." 521 U.S. at 437, 117 S.Ct. 2113. *But see Farrall v. A.C. & S. Co.,* 558 A.2d 1078, 1080–1081 (Del.Super.Ct.1989)

(stating that plaintiffs' expert evidence on the increased likelihood of cancer from asbestos exposure was admissible to show fear of cancer was "reasonable"). *But cf. Adams v. Clean Air Sys., Inc.,* 586 N.E.2d 940, 942 (Ind.Ct.App.1992) (stating in dicta that plaintiffs failed to prove exposure to asbestos).

24. 521 U.S. at 432–433, 117 S.Ct. 2113 (citing *Burns v. Jaquays Mining Corp.,* 156 Ariz. 375, 752 P.2d 28 (1987), *review dism'd,* 162 Ariz. 186, 781 P.2d 1373 (1989); *Mergenthaler v. Asbestos Corp. of Am.,* 480 A.2d 647 (Del. 1984); *Eagle–Picher Indus., Inc. v. Cox,* 481 So.2d 517 (Fla.Dist.Ct.App.1985), *review den.,* 492 So.2d 1331 (Fla.1986); *Capital Holding Corp. v. Bailey,* 873 S.W.2d 187 (Ky.1994); *Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171 (1982); *Simmons v. Pacor, Inc.,* 543 Pa. 664, 674 A.2d 232 (1996); *Ball v. Joy Tech., Inc.,* 958 F.2d 36 (4th Cir.1991); *Deleski v. Raymark Indus., Inc.,* 819 F.2d 377 (3d Cir.1987) (Pennsylvania and New Jersey law); *Adams v. Johns–Manville Sales Corp.,* 783 F.2d 589 (5th Cir.1986) (Louisiana law); *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271 (3d Cir.1985) (Pennsylvania law); *In re Hawaii Federal Asbestos Cases,* 734 F.Supp. 1563 (D.Haw.1990) (Hawaii law); *Amendola v.*

Court identified three reasons for denying recovery of mental anguish damages in such cases: the "special 'difficult[y]' for judges and juries' in separating valid, important claims from those that are invalid or 'trivial'"; "a threat of 'unlimited and unpredictable liability'"; and "the 'potential for a flood' of comparatively unimportant, or 'trivial,' claims".[25]

For the same reasons, like the Supreme Court and courts in most other jurisdictions, we cannot permit recovery of mental anguish damages in cases like this one. In almost all instances involving personal injury, the law allows for the recovery of accompanying mental anguish damages, even if the mental anguish is not itself physically manifested.[26] But if bodily injury is at most latent and any eventual consequences uncertain, as when a person's exposure to asbestos has not produced disease, then the case for recovery of mental anguish damages is much weaker. A person exposed to asbestos can certainly develop serious health problems, but he or she also may not. The difficulty in predicting whether exposure will cause any disease and if so, what disease, and the long latency period characteristic of asbestos-related diseases, make it very difficult for judges and juries to evaluate which exposure claims are serious and which are not. This difficulty in turn makes liability unpredictable, with some claims resulting in significant recovery while virtually indistinguishable claims are denied altogether. Some claimants would inevitably be overcompensated when, in the course of time, it happens that they never develop the disease they feared, and others would be undercompensated when it turns out that they developed a disease more serious even than they feared. Also, claims for exposure could proliferate because in our society, as the Supreme Court observed, "contacts, even extensive contacts, with serious carcinogens are common."[27] Indeed, most Americans are daily subjected to toxic substances in the air they breathe and the food they eat. Suits for mental anguish damages caused by exposure that has not resulted in disease would compete with suits for manifest diseases for the legal system's limited resources. If recovery were allowed in the absence of present disease, individuals might feel obliged to bring suit for such recovery prophylactically, against the possibility of future consequences from what is now an inchoate risk.[28] This would exacerbate not only the multiplicity of suits but the unpredictability of results.

The question is not, of course, whether Carter and Wilson have themselves suffered genuine distress over their own exposure. We assume they have, and that their anxiety is reasonable. The question, rather, is whether this *type* of claim—for fear of an increased risk of developing an asbestos-related disease when no disease is presently manifest—should be permitted, regardless of any individual plaintiff's circumstances, when the effort in determining the genuineness of each claim and assuring appropriate recovery is beset with the difficulties we have described.[29] We conclude that no such action should be recognized.

*Kansas City So. R. Co.*, 699 F.Supp. 1401 (W.D.Mo.1988) (FELA); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 25 Cal. Rptr.2d 550, 863 P.2d 795 (1993) (in banc)).

**25.** *Id.* at 433, 117 S.Ct. 2113 (quoting *Gottshall*, 512 U.S. at 557, 114 S.Ct. 2396) (alteration in original).

**26.** *City of Tyler*, 962 S.W.2d at 495 (citing *Krishnan v. Sepulveda*, 916 S.W.2d 478, 481 (Tex.1995)).

**27.** 521 U.S. at 434, 117 S.Ct. 2113.

**28.** *See Childs v. Haussecker*, 974 S.W.2d 31 (Tex.1998).

**29.** *See Buckley*, 521 U.S. at 436, 117 S.Ct. 2113 ("[T]he common law in this area does not examine the genuineness of emotional harm case by case. Rather, it has developed recovery-permitting categories the contours of which more distantly reflect this, and other, abstract general policy concerns. The point of such categorization is to deny courts the authority to undertake a case by case examination.").

## C

The principal case on which Carter and Wilson rely is the Fifth Circuit's decision in *Watkins v. Fibreboard Corp.*[30] There, plaintiffs produced evidence that they suffered pleural and parenchymal abnormalities that they claimed were due to exposure to asbestos at work. The jury found that plaintiffs' exposure had not caused them any disease but had caused them mental anguish. The Fifth Circuit concluded that Texas law, which governed the case, allowed recovery of mental anguish damages in such circumstances. For authority, the court looked to a decision of our Sixth Court of Appeals, *Fibreboard Corp. v. Pool,*[31] and a prior decision of the Circuit, *Dartez v. Fibreboard Corp.*[32] But in *Pool,* unlike *Watkins,* all the plaintiffs pleaded and proved serious asbestos-related injuries: two lung cancer deaths, two cases of asbestosis, and one case of asbestos-related pleural disease.[33] The court held that the district court had properly instructed the jury that they could award mental anguish damages for any reasonable fear the plaintiff with asbestosis had that he might suffer cancer or mesothelioma in the future, distinct from any fear of cancer which any person might have.[34] Thus, *Pool* supports the proposition that a plaintiff who has developed an asbestos-related disease may recover mental anguish damages for a reasonable fear of

developing other asbestos-related diseases. Assuming that that proposition is correct, something we do not decide here, *Pool* does not support *Watkins'* conclusion that a person who has no asbestos-related disease can likewise recover for fear of possible future disease.

*Dartez* does appear to support *Watkins'* conclusion, but its reasoning is flawed. The plaintiff in *Dartez* claimed mental anguish damages for his increased risk of developing cancer or mesothelioma due to his exposure to asbestos. The court noted that no Texas court had permitted such recovery but concluded that Texas law would allow it based on a number of analogous cases. In each of the Texas cases the court cited, however, plaintiff suffered present and manifest physical injuries as well as a fear of future complications as a result.[35] The court in *Dartez* also stated that it had previously decided in *Gideon v. Johns–Manville Sales Corp.,*[36] that Texas law would allow recovery of mental anguish damages for fear of future disease without a present physical injury. But the plaintiff in *Gideon* suffered from asbestosis and claimed a fear of developing mesothelioma. Neither *Gideon* nor any Texas court decision supports the holding in *Dartez.*

*Watkins* does not correctly state Texas law, nor did it attempt to analyze the

**30.** 994 F.2d 253 (5th Cir.1993).

**31.** 813 S.W.2d 658 (Tex.App.—Texarkana 1991, writ denied), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993).

**32.** 765 F.2d 456 (5th Cir.1985).

**33.** 813 S.W.2d at 666.

**34.** *Id.* at 675.

**35.** *Kimbell v. Noel,* 228 S.W.2d 980 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.) (suggesting that a woman could recover mental anguish damages for fear that a traumatic injury to her breast in a car accident could, according to her physician, result in cancer); *Dulaney Inv. Co. v. Wood,* 142 S.W.2d 379 (Tex.

Civ.App.—Fort Worth 1940, writ dism'd judgmt cor.) (holding that plaintiff could recover mental anguish damages for fear that the injury to his elbow in an elevator would lead to paralysis); *Gamer v. Winchester,* 110 S.W.2d 1190 (Tex.Civ.App.—Fort Worth 1937, writ dism'd) (indicating that person who was physically injured in a dog attack could offer evidence of mental anguish caused by fear of developing rabies); *Trinity & S. Ry. Co. v. O'Brien,* 18 Tex.Civ.App. 690, 46 S.W. 389 (1898, no writ) (same); *Southern Kansas Ry. Co. v. McSwain,* 55 Tex.Civ.App. 317, 118 S.W. 874 (1909, no writ) (holding that person whose foot was mangled in a railroad accident and subsequently amputated could offer evidence of mental anguish due to his fear of developing blood poisoning).

**36.** 761 F.2d 1129 (5th Cir.1985).

development of the common law as *Buckley* did.

## III

We add this cautionary note. The principles we have used to deny recovery of mental anguish damages for fear of the possibility of developing a disease as a result of an exposure to asbestos may not yield the same result when the exposure is to some other dangerous or toxic element. Exposure to asbestos, a known carcinogen, is never healthy but fortunately does not always result in disease. In *Buckley,* for example, a steam tunnel worker employed for years with little or no protective gear in closed areas where he and his fellow workers were so covered with asbestos as to be dubbed "the snowmen of Grand Central"[37] had developed no asbestos-related disease in the five years following his employment.[38] Buckley's expert witnesses testified that this extensive exposure to asbestos increased his risk of death due to an asbestos-related disease by at most five percent.[39] The substantial uncertainty that exposure to asbestos will ultimately result in disease, even though the risk of disease is significantly increased, and the ordinarily long latency period before disease develops counsel strongly against compensating these types of fears. The consequences of exposure to other toxic materials vary, and while the analysis in other circumstances should be the same as that which we have employed here, the outcomes may be different.

\* \* \* \* \*

Accordingly, the judgment of the court of appeals is reversed insofar as it reverses the judgment of the district court, and judgment is rendered that Carter and Wilson take nothing against Temple–Inland.

---

37. *Buckley,* 521 U.S. at 446, 117 S.Ct. 2113 (Ginsburg, J., dissenting).

38. *Buckley v. Metro–North Commuter R.R.,* 79 F.3d 1337, 1341 (2 nd Cir.1996).

39. *Buckley,* 521 U.S. at 427, 117 S.Ct. 2113.