

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BEAU PARRY, Individually and as Next Friend to his Minor Daughters, | § | No. 08-21-00094-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 120th Judicial District Court |
| | § | |
| JASON A. SHAFFER, VANEZA R. SHAFFER, and TEAM TUTTLE, INC. d/b/a LEGACY REAL ESTATE SERVICES, | § | of El Paso County, Texas |
| | § | (TC#2019DCV1811) |
| | § | |
| Appellees. | § | |

**O P I N I O N**

In *City of Tyler v. Likes*[1] the Texas Supreme Court laid out a framework for deciding when a person may sue for mental anguish damages. In this case, we must decide whether a mental-anguish-only claim exists for persons who were unknowingly videoed in the privacy of their home, but the recording was never shown to have been seen by, or transmitted to, anyone outside the home. The sole claim before us is for negligence against the former occupiers of the house who left an active security system in place. We are not dealing with the intentional tort of invasion of privacy, nor a claim by one household member who surveils someone else in the house. Based on

---

[1] 962 S.W.2d 489 (Tex. 1997)

the facts developed in the summary judgment record, we conclude that a mental-anguish-only claim conflicts with *Likes* and the genre of cases that address when mental anguish is a recoverable element of damage. And because mental anguish was the only element of damage pleaded or proven in response to a no-evidence motion for summary judgment challenging the element of damages, we affirm the trial court's grant of the summary judgment motions below.

# I. BACKGROUND

## A. Factual Background[2]

Jason and Vaneza Shaffer (the Shaffers) purchased and lived for a time in a residential property in El Paso, Texas. For the security of their family, and infant child, the Shaffers installed a video recording home security system. The system consisted of five cameras. Two of the cameras—that looked like obvious cameras—were located at the front and back door to the house. Three cameras were located inside the house and looked like motion sensors. One of those inside cameras was in the "great room," one in the "nursery," and one in a closet of the master bedroom. All the cameras were motion activated, and all were connected by hard wires to a recording device in the attic. The recording device included a hard drive that would store recorded video clips; when the system's memory capacity was reached, the system would record over the older files.

The security system allowed the Shaffers to view recordings when they were away from the house. Through an internet connection, the recordings could be accessed from a website by someone with the correct password. However, the Shaffers could not access the recordings remotely if the security system was not connected to the internet. Without an internet connection, the only way to access the recordings was through the hard drive in the attic of the home.

---

[2] This case comes to use from a granted summary judgment. The recitation of facts is taken from the summary judgment record, stated in the light most favorable to the non-movant.

In March 2017, the Shaffers vacated the house intending to sell it. When they did so, they terminated the internet service to the home and believed that they unplugged the security system. Mr. Shaffer admits, however, that he did not uninstall the batteries from the cameras when they moved out of the home. And if the system was plugged in, it would continue to record even if the system was not connected to the internet.

Initially, the Shaffers listed the property with Team Tuttle, Inc. d/b/a Legacy Real Estate Services (Team Tuttle) to act as their sales agent. When the house did not sell quickly, the Shaffers decided to lease the property. To that end, they entered a "Residential Leasing and Property Management Agreement" with Team Tuttle to act as their property manager. The agreement outlined Team Tuttle's responsibilities, including showing the home to prospective renters, preparing a lease agreement, collecting rent, and handling repairs. Before renting the property, Team Tuttle performed a "walkthrough" inspection. The walkthrough process for new properties adheres to Team Tuttle's policy to identify needed repairs and ensures that it is renting safe properties. During this inspection, the Team Tuttle employee did not inspect the attic where the hard drive of the security system was located because he was unsure that the ladder leading to the attic would support his weight. Some testimony supports the proposition that had the inspector gone into the attic, he would have seen the recording device with its hard drive. Team Tuttle claims that the Shaffers never disclosed the security system in the home and that Team Tuttle did not learn about the security system until this litigation. Mr. Shaffer claims that he did disclose the security system to Team Tuttle, but he admits that there is no written record or any record of this disclosure.

In December 2017, Appellant Beau Parry rented the Shaffers' property. Before signing the lease, Mr. Parry did his own walk through of the home, but he too, never checked the attic of the

3

home. He did notice the two outside cameras, but he concluded they were not activated because an accessible security system panel in the foyer was inoperable. On December 29, 2017, he and his two daughters moved into the house.

Eight days after their move in, the Parrys noticed that one of the outside cameras appeared to be active when a light on it energized. Mr. Parry then traced the wiring to the attic and discovered the system's hard drive. Mr. Parry followed the other wires from the recording device and discovered that the three apparent motion sensors inside the home were also cameras. When he looked at the downloaded video clips on the hard drive, he discovered that the system had recorded he and his family for the time that they had been living in the home. His daughters' bedroom was in the same room as the Shaffers' nursery, and the camera in that room had record his daughters (then 12 and 13 years old) walking in and out of the bathroom while nude. Mr. Parry then shut down the security system.

### B. Procedural History

Beau Parry for himself and on behalf of his minor children (the Parrys) sued the Shaffers and Team Tuttle. Their original petition asserted causes of action against the Shaffers for invasion of privacy, intentional infliction of emotional distress, and negligence. The Parrys also claimed that Team Tuttle was negligent for not disclosing the existence of the active cameras to them. As to both defendants, the Parrys sought damages for severe emotional pain and mental anguish along with exemplary damages.

After several months of discovery, the Shaffers filed a no-evidence motion for summary judgment claiming that the Parrys had no evidence to support several essential elements for each of the three claims that they had asserted against the Shaffers in their original petition. The motion generally hinged on the claim that the Parrys "have no evidence that the Shaffers videotaped the

4

[Parrys], viewed any alleged video recording of the [Parrys], or that any alleged video recording of the [Parrys] was transmitted out of the home." As for the negligence claim, the Shaffers contended that any duty of care arose under premises liability law, and as such, the Parrys had no evidence that the Shaffers controlled the property, owed any duties to the Parrys, breached any duties, or that any breach proximately caused any damages.

Team Tuttle filed a no-evidence and traditional motion for summary judgment claiming that the Parrys, who sued Team Tuttle only under a negligence theory, were limited to a premises liability claim under Texas law. Under that theory, Team Tuttle contended that: (1) it was not an owner or possessor of the property, (2) it had no actual or constructive knowledge of the active recording system, and (3) because the images never left the property, or were viewed by others, that there was no evidence of damages.

In response to the summary judgment motions, the Parrys amended their petition to drop their invasion of privacy and intentional infliction of emotional distress claims. They also filed responses to both the Shaffers' and Team Tuttle's motions for summary judgment which included: (1) the depositions of Patrick Tuttle and Jason Shaffer; (2) photographs of the cameras and recording device in the house; (3) the Tuttle property walkthrough report; and (4) Beau Parry's declaration. Their response acknowledged that the negligence claim was grounded in premises liability, and acknowledged that a lessor of property generally has no duty to a tenant or their invitees for dangerous conditions on the leased premises.[3] But the response built the Parrys' case around an exception to that rule such that a lessor may be liable when they conceal a known defect on the leased premises.[4] The Parrys argued that the Shaffers knew of the system because they

---

[3] *See Johnson Cnty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996) ("This general rule stems from the notion that the lessor relinquishes possession or occupancy of the premises to the lessee.").

[4] *Id*., *citing* RESTATEMENT (SECOND) OF TORTS § 358 (1965).

installed it, and Team Tuttle knew or should have learned of the system when it had control of the rental property. They claim both defendants concealed the fact of the operational security cameras.

As for damages, Beau Parry's declaration states that after finding the operational cameras:

Thereafter, I and my daughters were terrified, untrusting of our management company, disgusted, horrified, and anguished at the thought that the hidden cameras could have been accessed either directly or remotely, and fearful that whatever was recorded could have been viewed, shared, streamed, or uploaded by any number of individuals. My daughters believed people were entering the attic at that point, while we were there. We no longer felt safe. We have, at various times, been unable to sleep and suffered from depression. We continue to suffer from extreme anxiety and nervousness caused by the uncertainty of what was recorded by the video cameras, who knows of the videos, who has seen the videos, whether such videos were broadcast on the internet, and for what deviant purpose viewers may be watching such videos. We have been plagued by the thought that someone was recording us in our most private sanctuary - our home. Despite having now moved away from El Paso, we continue to suffer from these afflictions and do not know when that will end.

Both the Shaffers and Team Tuttle then filed replies that challenged whether this evidence was legally sufficient to establish recoverable damages under *City of Tyler v. Likes* which attempts to define when one may sue for mental anguish/emotional distress.

The trial court granted both Team Tuttle's traditional and no-evidence motion for summary judgment and the Shaffers' no-evidence motion for summary judgment without identifying which element or argument it accepted.

## II. STANDARD OF REVIEW

Under Rule 166a(i) of the Texas Rules of Civil Procedure, "a party without presenting summary judgment evidence may move for summary judgment on the grounds that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX.R.CIV.P. 166a(i). A court must grant a no-evidence motion for summary judgment "unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id*.

6

A no-evidence motion for summary judgment is like a pre-trial motion for directed verdict, as both are reviewed under the same legal sufficiency standard of review. *Jones v. Coppinger*, 642 S.W.3d 51, 61 (Tex.App.--El Paso 2021, no pet.); *Sage v. Howard*, 465 S.W.3d 398, 402 (Tex.App.--El Paso 2015, no pet.), *citing King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). "A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). A genuine issue of material fact is one supported by more than a scintilla of evidence. *Sage*, 465 S.W.3d at 403, *citing King Ranch, Inc.*, 118 S.W.3d at 751. More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc.*, 118 S.W.3d at 751, *quoting Merrel Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "Under this standard, we review the evidence in the light most favorable to the non-movant, credit evidence favorable to that party if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Sage*, 465 S.W.3d at 402.

A trial court should grant a no evidence motion for summary judgment when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively established the opposite of a vital fact. *Sage*, 465 S.W.3d at 403, *citing King Ranch, Inc.*, 118 S.W.3d at 751.[5] We review a trial court's decision to grant a summary judgment de novo. *Salazar v. Ramos*, 361

---

[5] Team Tuttle filed a hybrid motion for summary judgment, that included affirmative proofs seeking to disprove many elements that it claimed the Parrys lacked any evidence on. We generally first review the no evidence portion of a hybrid motion for summary judgment. *Salazar v. Ramos*, 361 S.W.3d 739, 745 (Tex.App.--El Paso 2012, pet. denied). Even at that, the Texas Supreme Court has noted that though the burdens vary for traditional and no-evidence motions, when both parties bring forward evidence as part of a hybrid motion, the "differing burdens are immaterial and the ultimate issue is whether a fact issue exists." *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013), *citing Buck v. Palmer*, 381 S.W.3d 525, 527 n.2 (Tex. 2012).

S.W.3d 739, 745 (Tex.App.--El Paso 2012, pet. denied).

### III. DISCUSSION

On appeal, the Parrys argue that the trial court erred in granting both the Shaffers and Team Tuttle's motions for summary judgment. As they must, the Parry's address each element of their negligence claim. Because we decide the case based only on the element of damages, we limit our discussion to that issue.

The parties take as a given that the Parrys' needed to present evidence that any breach of a duty by the Shaffers and Team Tuttle must have proximately caused them injury. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (noting damages is an essential element in premises liability claim regardless of the plaintiff's status on the property). The only damages that the Parrys pleaded for, or offered evidence on, was for their mental anguish upon learning of the recording device, and their fear that the video files could have been viewed by someone outside the house. The problem with that theory, however, is that while "mental anguish is a real and serious harm," it is not always a recoverable element of damage. *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997) ("For many breaches of legal duties, even tortious ones, the law affords no right to recover for resulting mental anguish.").

In *Likes*, for instance, a homeowner sued the City of Tyler for property damage from a flood and for her mental anguish upon discovering after the flood that the water had destroyed her personal records, family correspondence, family photographs, and keepsakes. *Id*. at 493. She also premised the mental anguish claim on "her feelings of insecurity both for her home, personal property and personal safety during times of rainfall." *Id.* While not questioning that the anguish from losing irreplaceable items was real, the court concluded that the loss of her personal property could not support a related reward for mental anguish. *Id.* at 497.

8

The *Likes* court establishes a "framework" and not "unified theory" to decide which claims do and which do not permit awards for mental anguish. *Id*. at 496. That framework starts with the premise that Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish. *Id*. at 494, *citing Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993). In *Boyles v. Kerr*, the defendant surreptitiously video-taped he and his girlfriend having sex. 855 S.W.2d 593, 594 (Tex. 1993). He then shared the video with several of his friends, and both the video and news of the video, quickly spread through the school that the girl attended. *Id*. She sued her now former boyfriend and several of his friends for negligent infliction of emotional distress and obtained a substantial jury verdict. *Id*. The Texas Supreme Court, however, concluded that "there is no general duty in Texas not to negligently inflict emotional distress." *Id*. Instead, a "claimant may recover mental anguish damages only in connection with defendant's breach of some other legal duty." *Id.*

The *Likes* court acknowledged several situations that allow for the recovery of mental anguish damages:

> (1) when the mental anguish is the foreseeable result of a breach of duty arising out of certain special relationships, such as the relationship between a physician and a patient;
>
> (2) for some common law torts that generally involve intentional or malicious conduct such as libel and, by analogy, for violations of certain statutes such as the DTPA;
>
> (3) in virtually all personal injury cases where the defendant's conduct causes serious bodily injury;
>
> (4) Even absent intent or malice by the defendant, for those "few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." This latter category includes wrongful death, and actions by bystanders who witness a close family member's serious injury.

*Likes*, 962 S.W.2d at 494-96.

Later courts have declined to permit mental anguish damages in other contexts. *See Douglas v. Delp*, 987 S.W.2d 879, 885 (Tex. 1999) ("[W]e hold that when a plaintiff's mental

9

anguish is a consequence of economic losses caused by an attorney's negligence, the plaintiff may not recover damages for that mental anguish."); *Krishnan v. Sepulveda*, 916 S.W.2d 478, 482 (Tex. 1995) (a husband may not recover mental anguish damages suffered because of his wife's injury and loss of her fetus); *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 563 (Tex.App.--Austin 2004, no pet.) ("Because there is no support in Texas law for awarding mental anguish damages for the loss of a dog, we reverse the trial court's award of mental anguish damages."); *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 96 (Tex.App.--Houston. [14th Dist.] 1998, pet. denied) (rejecting mental anguish claim based on false positive reporting of patient being HIV positive where no physical injury was sustained).

The *Likes* court acknowledged its list of exceptions was not exhaustive, but two decisions by the Texas Supreme Court, one noted by *Likes*, and one that followed it, are instructive here. In *Motor Express, Inc. v. Rodriguez*, the court addressed *Boyles v. Kerr*'s "breach of some other legal duty" language. 925 S.W.2d 638, 639 (Tex. 1996) (per curiam). In *Motor Express*, two truck drivers parked their rigs in front of the defendant's business. As one driver alighted from his rig, he was struck and killed by a passing motorist. The other driver—the plaintiff in the suit—sued the business for mental anguish from witnessing the event and his own "life-threatening experience." *Id*. The court of appeals rejected a bystander injury claim, but based on *Boyles v. Kerr*'s language that a claim might proceed if based on "some other legal duty," it permitted a mental anguish claim based on a possible breach of the landowner's duty to provide safe parking on its premises. *Id.* The Texas Supreme Court, however, disagreed and declined to allow mental anguish damages to a person who witnesses an accidental death on a landowner's property, but who themselves suffered no personal physical injury. The court concluded: "While there may be certain relationships that give rise to a duty which, if breached, would support an emotional distress

10

award even absent proof of physical injury, the landowner-invitee relationship is not one." *Id*. at 639 (internal citations omitted). *Likes* cites *Motor Express*, and we consider it as part of the framework for deciding when mental anguish damages are a recoverable element of damage.

In a case that followed *Likes* the court in *Temple-Inland Forest Products Corp. v. Carter* declined to permit a plaintiff to recover for the fear of contracting cancer from asbestos exposure when the plaintiff did not actually have an asbestos related disease. 993 S.W.2d 88, 91 (Tex. 1999). The court repeated its observation from *Likes*, that whether a "plaintiff can recover mental anguish damages without physical injury 'depends on both the nature of the duty breached and the quality of proof offered by the plaintiff.'" *Id.*, *quoting Likes*, 962 S.W.2d at 494. The plaintiff in *Temple-Inland* sued a property owner on whose land he claimed to have been exposed to asbestos. The court, focusing on the duty issue, reiterated its view from *Motor Express* that "a landowner's tortious breach of his duty to invitees . . . is not a wrong for which mental anguish is compensable absent physical injury." *Id*. This was true whether the plaintiff's claim was grounded only in the common law or based on a federal regulation. *Id*.

*Likes*, *Motor Express*, and *Temple-Inland*, preclude any claim by the Parrys that a breach of premises liability duties can constitute the "breach of some other legal duty" that might support a mental anguish claim. In *Motor Express* and *Temple-Inland*, the courts rejected breach by a landowner of their duties to an invitee as grounds to assert a mental anguish claim (at least where there was no accompanying personal injury claim). *Motor Express*, 925 S.W.2d at 639; *Temple-Inland*, 993 S.W.2d at 91. Likewise, those cases would belie any argument that the landlord-tenant relationships is one of those "special relationships" supporting a mental anguish claim. And Beau Parry's declaration that the events here caused the Parrys to lose sleep, is not the sort of serious personal injury that can underpin a mental anguish claim. *See Likes*, 962 S.W.2d at 496 ("Likes

11

has not claimed damages for bodily injury, however, and the minor physical symptoms she describes, such as difficulty sleeping, are not serious bodily injuries that can form the basis for recovering mental anguish damages.").

Understandably, the Parrys focus on another exception noted in *Likes*—claims of a "shocking and disturbing nature." *Id.* ("Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result."). The only examples for those type of claims suggested by *Likes* are wrongful death suits, and bystander claims for witnessing a close family relative's serious injury. *Id*. In the abstract, we could agree that being surreptitiously filmed in one's own home, particularly in one's own bedroom, by dictionary definition, could be shocking and disturbing. And we of course agree that a "person in their home who is not standing in front of a window with open curtains may reasonably expect that they are not subject to public view . . . and that [t]he State has an interest in protecting its citizens' personal privacy and security in the seclusion of their homes where they have a legitimate right to expect to be free from prying eyes and lenses." *Ex parte Metzger*, 610 S.W.3d 86, 103 (Tex.App.--San Antonio 2020, pet. ref'd). But that shock loses its luster when coupled with the fact that the images never left the sole possession of the Parrys. The Shaffer's motion for summary judgment begins with the proposition that there is no evidence that any of the video recordings were transmitted out of the home. Team Tuttle's affirmative motion for summary judgment included evidence that when the Shaffer's moved out of the house, they cancelled the internet service. And the record contains evidence that absent an internet connection, the only way to access the images on the hard drive was directly from the hard drive itself, which was located in the house. Mr. Parry acknowledged in his deposition that he had

no evidence that any of the images were ever transferred over the internet.[6]

The Parrys' respond with one reference in Beau Parry's declaration that while he was in the house for those first eight days, Team Tuttle "sent several repair people and individuals in and out of the Property to perform several repairs, including but not limited to re-keying the locks." Their reply brief posits that one of those repair persons could have viewed or transmitted the images, or plugged the security system into a downstairs router, and somehow downloaded images. While we accord the non-movant to summary judgment every fair inference from the evidence, *Sage*, 465 S.W.3d at 402, the Parrys simply ask too much from this evidence. Any repair person in the house while they were the leaseholders, would be subject to the Parrys oversight. Nothing in the declaration suggests any of the repairpersons went into the attic, or that the Parrys had an operational router connected to the internet, or if that they did, that any repairperson had access to it. Nor does the declaration explain how the repairperson—such as the locksmith—would have known there was salacious video on the hard drive in the attic. In sum, there is simply no evidence that any images were transmitted outside the house. *See Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998) ("[M]eager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding."); *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993) (holding that a factual finding must be supported by more than mere surmise or suspicion).

---

[6] We note these excerpts from his deposition:

> Q. And as -- as we sit here today, you have no evidence that any of these images were ever transmitted over the Internet. Correct?
>
> A. I have no evidence of that.
>
> . . .
>
> Q. Have you -- has anyone ever told you, approached you, or have you ever come across anything on the Internet that would be an image, whether an image or video recording, of -- of what you claim to have found on that hard drive?
>
> A. No. That was one of my goals in disconnecting that device and removing it.

Without an actual release of any of the images to a third party, the Parrys are left with only the argument that they *feared* that a release might have occurred.[7] As they argue in their Reply Brief, "In the age of the internet, wireless internet, remote access, and hacking, the instant reaction is: A video of me or my daughters, in the nude, is now on the internet or being remotely viewed." Reply Brief at 23.[8] But *Likes* and *Temple Inland* foreclose that argument. The plaintiff in *Likes* also based her mental anguish claim on the *fear* that the City's failure to manage flood waters would make her insecure during future rainfalls. The court dispensed with that claim because "[i]t has been established for over a century that '[a] person who is placed in peril by the negligence of another, but who escapes without injury, may not recover damages simply because he has been placed in a perilous position. Nor is mere fright the subject of damages.'" *Likes*, 962 S.W.2d at 500, *quoting Gulf, C. & S.F. Ry. Co. v. Trott*, 25 S.W. 419, 420 (Tex. 1894). And also to the point, *Temple-Inland* rejected a mental anguish claim based on the *fear* of contracting cancer, where a plaintiff inhaled a carcinogenic substance, but otherwise had no personal injury claim. *Temple-Inland*, 993 S.W.2d at 91. The Parrys' fear that visual images on a hard drive located in a premises that they controlled, with no apparent link to the outside world, is not the "disturbing and shocking" sort of claim that allows for mental anguish damages.

---

[7] We draw a sharp distinction from the facts here, to those where an improper recording of a person in their home is shared outside the house. In *Doty v. ADT, LLC*, for instance, the court entertained a claim filed by a homeowner against ADT, a home security company. No. 20-60972-CIV-SINGHAL, 2020 WL 9071421, at *5–6 (S.D. Fla. Dec. 30, 2020) (applying Texas law). One of ADT's employees obtained the passwords and downloaded videos from an ADT home security system without the permission of the homeowner. The court declined to dismiss one count of that suit based on a *Likes* rationale. That set of facts is not before us, and we express no opinion on how *Likes* might apply to that situation. We also emphasize that there is no allegation or proof that either defendant left operational video cameras in the home with the intent to re-enter the house once the Parrys left to retrieve any recordings.

[8] This precise statement was made in response to Team Tuttle's argument that it owed no duty to the Parrys because the video system, without a link to the outside world, was not an "unreasonably dangerous" condition, which is one element for a premises liability claim. We decline to reach that duty issue, as the question of what damages might be recoverable assuming a duty exists, is the narrower question. *See VanDevender v. Woods*, 222 S.W.3d 430, 433 (Tex. 2007) ("[T]he cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more[.]"), *quoting PDK Labs., Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring).

14

We note one other factor from the framework set out in *Likes*. Part of the court's rationale for declining to permit mental anguish damages for the loss of personal property is that the law already allows a recovery for the full value of the personal property. *Likes*, 962 S.W.2d at 497. And here, the law already allows for recovery for the intentional tort of invasion of privacy. *See Billings v. Atkinson*, 489 S.W.2d 858, 860-61 (Tex. 1973) (allowing damages for mental suffering without the need to show actual physical injury in a case of "willful invasion of the right of privacy"); *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993) (defining elements of claim to include "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person"). Or, a plaintiff may seek mental anguish damages (without a physical injury) for the intentional infliction of emotional distress. *Twyman v. Twyman*, 855 S.W.2d 619, 620 (Tex. 1993) (expressly adopting the tort of intentional infliction of emotional distress); *Boyles*, 855 S.W.2d at 603 (remanding case in the interest of justice so plaintiff might pursue the newly adopted intentional infliction of emotional distress cause of actions). Finally, we note that the legislature has criminalized the photography and transmissions of images created by surreptitiously placed devices in a home, bathroom, or changing room. TEX.PENAL CODE ANN. § 21.15 (b)(1); *Ex parte Metzger*, 610 S.W.3d at 104-06 (upholding constitutionality of statute). We view these other avenues of relief and enforcement as a hedge against those who might intentionally seek to improperly record others in the privacy of the home.

## IV.  CONCLUSION

The Parrys' only element of a pleaded for and evidenced damages, is mental anguish. We conclude, however, that mental anguish damages are not a recognized element for the unauthorized recording of a person in their home where: (1) the allegation is based on negligent, and not

15

intentional conduct; (2) the negligence duty arises, if at all, from the owner/occupier's obligations under premises liability law to a tenant; (3) no evidence supports that the unauthorized recordings were ever released beyond the plaintiff's possession and control; and (4) the claim involves no other damage claim, such as a serious personal injury. With these important limitations, we overrule the Parrys' Issues One and Two, and affirm the trial court's judgment below.

JEFF ALLEY, Justice

November 16, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.