NUMBER
13-00-241-CV

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

___________________________________________________________________

 

WASTE DISPOSAL CENTER, INC.,                                          Appellant,

 

                                                   v.

 

MICHELLE LARSON AND SOILA VALDEZ, ET AL.,                   Appellees.

___________________________________________________________________

 

                        On
appeal from the 156th District Court

                               of
San Patricio County, Texas.

__________________________________________________________________

 

                                   O
P I N I O N

 

       Before
Chief Justice Valdez and Justices Hinojosa and Rodriguez

                                Opinion
by Justice Rodriguez

 








This is a limited appeal from a jury trial.  See Tex.
R. App. P. 34.6(c)(1).  Appellant,
Waste Disposal Center, Inc. (Waste Disposal), appeals from a judgment rendered
in favor of appellees, Soila
Valdez and Michelle Larson.  By four
issues, Waste Disposal contends there is no evidence to support the jury=s award of actual
damages, and because there is no evidence of actual damages, exemplary damages
and court costs should not have been recovered. 
By three issues, cross-appellants, Soila
Valdez, Marcus, Norma and Frederick Atkinson, as statutory wrongful
death beneficiaries and sole heirs of Frederick James Atkinson (Deceased),
Javier Gomez, Jr., by next friend Dolores L. Gomez, and Abel and Belinda Valdez
(landowners), bring a cross-appeal against cross-appellees,
Waste Disposal and the estate of Franklin F. Kelley (Estate).  The landowners contend the trial court erred
in dismissing their suit against the Estate on jurisdictional grounds and by
failing to charge the jury on their claims of strict liability.  Cross-appellant Soila
Valdez also argues that the exemplary damages cap is not constitutional.  We affirm, in part, and reverse and render,
in part.

                                                    I.  Background








Multiple plaintiffs, including Valdez and Larson, filed suit against
numerous defendants who owned, operated, or transported waste to a landfill
located at the intersection of County Road 39 and FM 1945 in Sinton,
Texas.  The plaintiffs sought damages for
both personal injury and property damages, alleging multiple causes of action,
including negligence, trespass, and nuisance. 
Valdez and Larson, among other plaintiffs, went to trial against several
defendants including Browning Ferris, Inc., a/k/a BFI Waste Systems of North
America, Inc. (BFI), and appellant, Waste Disposal.  The jury found Waste Disposal=s and BFI=s negligence
proximately caused property damage to Larson and Valdez.  It also found Waste Disposal and BFI
committed a willful trespass and created a nuisance on Valdez=s property.  The jury awarded Valdez $20,000.00, and
Larson $2,500.00, for diminution of the market value of their respective
properties.  The jury further awarded
Valdez $25,000.00 for mental anguish arising as a result of the willful
trespass and the nuisance.  No mental
anguish damages were awarded to Larson. 
Finally, the jury awarded Valdez $1,000,000.00 in exemplary damages
against BFI and $500,000.00 in exemplary damages against Waste Disposal.

After the jury verdict, but prior to entry of judgment, Valdez and
Larson fully compromised and settled their claims with some of the defendants,
including BFI.  Without granting Waste
Disposal=s motion to disregard
the jury=s findings, and after
applying the settlement credit, the trial court entered judgment in favor of
Valdez and against Waste Disposal in the sum of $200,000.00 as exemplary
damages, plus post-judgment interest and costs of $50,753.87.

II.  Diminution of Market Value

By its first issue, Waste Disposal contends there is no evidence of a
diminution in market value of either Valdez=s property or Larson=s property.  Waste Disposal argues that testimony given by
Valdez and Larson reflects only their personal, subjective feelings, and does
not quantify market value or any reduction thereof.

A.  Standard of Review








In determining whether legally sufficient evidence supports the jury=s findings, we must
review all evidence in the light most favorable to the party in whose favor the
verdict has been rendered, and disregard all inferences to the contrary.  Bradford v. Vento, 48 S.W.3d 749, 754
(Tex. 2001).  We must determine whether
that evidence Awould enable
reasonable and fair-minded people to differ in their conclusions.@  Merrell Dow Pharm.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); see
Formosa Plastics Corp., v. Presidio Eng=rs & Contractors,
Inc.,
960 S.W.2d 41, 48 (Tex. 1998); Tex. Workers= Comp. Ins. Fund v.
Serrano,
985 S.W.2d 208, 210 (Tex. App.BCorpus Christi 1999,
pet. denied).  The verdict must remain
intact unless there is (1) no evidence of a vital fact; (2) the evidence
supporting the fact has no legal viability; (3) the evidence is no more than a
scintilla; or (4) the evidence conclusively proves the opposite fact.  Juliette
Fowler Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 666 (Tex. 1990).

B.  The Law








A property owner can provide opinion testimony regarding
diminution in market value resulting from permanent damage to land, but the
testimony must show that the  diminution
refers to market value rather than intrinsic value or some other value.  Porras v.
Craig, 675 S.W.2d 503, 504 (Tex. 1984). 
Texas courts have defined market value as the price that property would
bring when offered for sale by one who desires, but is not obliged to sell, and
is bought by one who is under no necessity to buy.  City of Harlingen v. Estate of Sharboneau, 48 S.W.2d 177, 182 (Tex. 2001) (citing State
v. Carpenter, 126 Tex. 618, 39 S.W.2d 979, 979, modifying 126 Tex.
604, 89 S.W.2d 194, 202 (Tex. 1936)); Bailey v. County Appraisal Dist. v.
Smallwood, 848 S.W.2d 822, 824-25 (Tex. App.BAmarillo 1993, no writ).  AOn the other hand,
intrinsic value is an inherent value not established by market forces; it is a
personal or sentimental value.@  Star Houston, Inc. d/b/a/ Star Motor Cars
v. Kundak, 843 S.W.2d 294, 298 (Tex. App.BHouston [14th Dist.]
1992, no writ) (citing Black=s
Law Dictionary 739 (5th ed. 1979)).

C.  Valdez=s Property








Valdez testified she paid $45,000.00 for her property.  The purchase value was also supported, in
part, by the admission of the 1981 deed and deed of trust that established the
assumption of two debts totaling $ 37,521.80. 
While the general rule is that statements about the initial cost of a
home are not admissible to show market value at the time of loss, see Redman
Homes, Inc. v. Ivy, 920 S.W.2d 664, 669 (Tex. 1996), no objection was made
to this evidence.  See Tex. R. App. P. 33.1.  Nonetheless, Valdez also testified that her
property was not worth what she originally paid for it, that her property Ais not worth
anything anymore,@ and nobody Awould buy the
place as it is.@  She also testified that she would not want to
Asell her
property to another person@; she would not
give another family the problems she has had. 
This is some evidence of Valdez=s opinion
concerning how the market value has diminished as a result of permanent damage
to the land.  See Porras,
675 S.W.2d at 504.  It is some evidence
of the price her property would bring if she desired but was not obliged to
sell to one who was under no necessity to buy. 
See City of Harlingen, 48 S.W.3d at 182; Bailey, 848
S.W.2d at 824-25.

Waste Disposal argues that market value is not established when
an owner testifies that her property has no value, with nothing more to support
her testimony.  The cases Waste Disposal
relied on, however, are distinguishable from the present case.  Pontiac v. Elliott, 775 S.W.2d 395,
399 (Tex. App.BHouston [1st
Dist.] 1989, writ denied), and Vista Chevrolet, Inc. v. Lewis, 704
S.W.2d 363, 371 (Tex. App.BCorpus Christi
1985, aff=d in part, rev=d in part, 709 S.W.2d
176 (Tex. 1986), involved deceptive trade practice claims.  In each case, the measure of damages was the
difference between the market value of the vehicle warranted and the market
value of the vehicle delivered.  Elliott, 775 S.W.2d at 399; Lewis,
704 S.W.2d at 371.  In the present case,
Valdez=s complaints
are of negligence, trespass and nuisance, not that she received less than she
was promised when she purchased her home.

Reviewing all evidence in the light most favorable to Valdez,
we conclude the evidence Awould enable
reasonable and fair-minded people to differ in their conclusions.@  Havner, 953
S.W.2d at 711 (Tex. 1997).  Thus, the
evidence is legally sufficient to establish a diminution in market value of
Valdez=s property.

D.  Larson=s Property








Larson testified the normal resale value, the market value, of
her property before the waste disposal issues arose was $40,000.00.  This value included the initial cost of the
land in 1996, and subsequent improvements. 
Larson further testified the current value for the land Awith the
contamination@ was zero, and
she would not sell the land to anyone and doubted that Aanybody would
buy it.@

Applying the same analysis as above, we conclude that this
evidence is legally sufficient to establish a diminution in market value of
Larson=s property.

Waste Disposal=s first issue
is overruled.

III.  Mental Anguish
Damages Awarded Valdez

In its second issue, Waste Disposal contends there is no
evidence to support the jury=s award of
mental anguish damages to Valdez as a result of the alleged property damage.

A.  The Law

A[A]n award of
mental anguish damages will survive a legal sufficiency challenge when the
plaintiffs have introduced direct evidence of the nature, duration, and
severity of their mental anguish, thus establishing a substantial disruption in
the plaintiffs= daily routine.@  Parkway Co. v. Woodruff, 901 S.W.2d
434, 444 (Tex. 1995).  When a claimant
fails to present direct evidence of the nature, duration, or severity of mental
anguish, we apply a traditional no evidence standard to determine whether the
record reveals any evidence of Aa high degree
of mental pain and distress@ that is more
than mere worry, anxiety, vexation, embarrassment, or anger, to support any
award of damages.  Id.

B.  Analysis

Valdez provided the following testimony regarding her alleged
mental anguish.








Q:               
Now, in-at
least in February he=s not showing that your platelet count is outside
the normal range anymore; is that correct?

 

A:               
That=s right.

 

Q:               
The normal
range is 130 to 400, and you=re down at 150, but your understanding is you=re still within the range, though down at the
bottom?

 

A:               
Right.

 

Q:               
Now, however,
at least from the time that Doctor Avery identified the problem in I believe
August of 1996, excuse me, toward the end of 1996 to July of 1997 when you went
to Doctor Lovoi, you wereByour results were significantly lower than that.

 

A:               
Yes, I believe
so.

 

Q:               
Now, even
though your blood problems have improved somewhat, has Doctor Lovoi told you that you don=t need to be concerned with this issue anymore?

 

A:               
No, he hasn=t told me not to be concerned.

 

Q:               
If it=sBis it to the contrary, are youBare you in fact concerned?

 

A:               
I am very
concerned about it, yes.

 

* * * * *

 

Q:               
(By Ms.
Thornton) Did the issueBthe question was if the issue of leukemia came up
in your discussions with Doctor Lovoi?

 

B:                
Yes, it came
up all the time.

 

* * * * *

 

Q:               
If I remember
it and if it makes sense.  The question
was: You told us that the issue of the possibility of leukemia for you has come
up in your discussion with your doctor.

 








A:               
Yes, ma=am.

 

Q:      And what we need to understand is how
that, or if it, has affected you, and affected the concerns that you had for
your health.

 

A:               
Very much
so.  I=m very concerned about that.

 

Q:      I know that you said you=re a private person and that you=re not comfortable discussing this, but you
understand that you need to talk to the jury and explain to them if this does
have an affect on you.

 

A:               
It definitely
has an effect on me.  If anything else
shows up on my blood, it=s like who wants to have this?  I mean, my family worry [sic] about it, and I
mean [they are] always pushing me to go see the doctor.  And like I said, I don=t like to talk about my health.  I=m not-I=m very private, I don=t like to do that, but that is something that has
to be of concern.  I=m very concerned about it.  It just makes me sick.  Really makes me sick to think that I=m going to get maybe even worse later on in my
life.

 








The testimony
above is the only evidence we find regarding mental anguish damages.   We conclude this testimony provides no
evidence of the nature, duration, or severity of Valdez=s mental anguish, nor does it establish a
substantial disruption in her daily routine.  
See id.  Furthermore, the
statements do not reveal any evidence of Aa high degree of mental pain and distress@ that is Amore than mere worry, anxiety, vexation,
embarrassment, or anger@ to support any award of damages.  Id. 
The testimony shows Valdez was concerned, and felt worry, frustration,
and perhaps anger and embarrassment. 
However, for the most part, this testimony only refers to the existence
of Amere
emotions.@  It does not support the conclusion that she
suffered compensable mental anguish. 
Moreover, the Texas Supreme Court has concluded that no action for fear
of an increased risk of developing a disease when no disease is presently
manifest, should be recognized.  Temple-Inland
Forest Prods. v. Carter, 993 S.W.2d 88, 93 (Tex. 1999).  Accordingly, we conclude there is no evidence
to support the jury=s award of mental anguish damages to Valdez.  Waste Disposal=s second issue is sustained.

IV.  Exemplary Damages

By its third
issue, Waste Disposal contends the award of exemplary damages to Valdez cannot
stand absent an award of actual damages.[1]  However, we have concluded the evidence was
legally sufficient to support an award of property damages based on willful
trespass and/or nuisance.  Therefore,
there is an award of actual damages to support an award of exemplary
damages.  See Tex. Builders v. Keller,
928 S.W.2d 479, 481 (Tex. 1996) (punitive damages may not be awarded unless
actual damages are found); Juliette Fowler
Homes, 793 S.W.2d at 667 (same). 
Waste Disposal=s third issue is overruled.

V.  Issues Raised by Cross-Appellant Landowners








A.  Jurisdiction over the Kelley Estate

By their first
cross-issue, the landowners contend the defendant Estate waived its right to a
directed verdict by participating in the case and is estopped
from asserting the trial court=s lack of jurisdiction over it.

Because an
estate is not a legal entity, it cannot be sued as such.  Henson v. Estate of Crow; 734 S.W.2d
648, 649 (Tex. 1987); Price v. Estate of Anderson, 522 S.W.2d 690, 691
(Tex. 1975).  A suit brought against the
estate, rather than a personal representative, is a matter of fundamental
jurisdiction, which cannot be waived as no legal entity is named as a
defendant; there is no one to waive the defect.  Id. (citing Henson, 734 S.W.2d at
649; Dueitt v. Dueitt,
802 S.W.2d 859, 861 (Tex. App.BHouston [1st Dist.] 1991, no writ)).  

In the present
case, the landowners sued the estate of Franklin F. Kelley, and although the
Estate appeared and participated in the case, the landowners did not sue by
name, or serve the personal representative of the Estate.  At no time did the personal representative
appear or participate in this case.  When
the trial concluded, the Estate moved for directed verdict on jurisdictional
grounds claiming it was not a legal entity. 
The trial court granted the directed verdict.  Accordingly, we conclude the Estate did not
waive its right to a directed verdict.








A suit seeking to establish a decedent=s liability on
a claim and subject an estate=s property to a
judgment should ordinarily be instituted against the personal representative
or, under appropriate circumstances, the heirs or beneficiaries.  Price, 522 S.W.2d at 691.  Nonetheless, a judgment against an estate is
not necessarily void if the personal representative of the estate appears in or
participates in the lawsuit.  Estate
of C.M. v. S.G.., 937 S.W.2d 8, 10 (Tex. App.BHouston [14th Dist.] 1996, no writ).  

In determining whether or not the Estate was estopped from asserting the trial court=s lack of
jurisdiction over it, we are guided by the Houston Court=s analysis in Estate
of C.M., wherein the estate was sued without any reference to the personal
representative.  Id.  The deceased=s husband, the executor of the estate,
was, however, sued as a co-defendant, but retained separate counsel from the
estate.  Id.  Although the deceased=s husband
participated at the trial court level for more than two years, he did not
appear at trial as executor.  Id.
at 10.  He was served with citation as a
representative of the estate, but did not adopt the case on behalf of the
estate as personal representative.  Id.  Although the jury found the estate liable,
the Houston Court concluded the trial court lacked jurisdiction to enter
judgment against the estate, and reversed that portion of the trial court=s judgment
against the estate and dismissed the appeal. 
Id. at 10-11.








In this case, the Estate, not the personal representative of
the Estate, was sued.  Furthermore, the
landowners concede there is no indication in the record that the personal
representative appeared, answered or participated directly in any way in the
trial.  Even though the Estate answered
and was represented by counsel, because the personal representative of the
Estate neither appeared nor participated in the lawsuit, we conclude estoppel does not apply. 
See id. at 10.

The trial court did not have jurisdiction to enter judgment
against the Kelley Estate, therefore, the dismissal was proper.  We overrule the landowners= first
cross-issue.

B.  Strict Liability
Charge

By their second cross-point, the landowners contend strict
liability should have been imposed in this case.  However, we conclude the landowners have
waived their right to complain about this issue.  First, they refer us to an order of the trial
court granting the AGenerator
defendant=s@ motion for
summary judgment with regard to strict liability.  Waste Disposal was not named as a party in
that motion or in the trial court=s order.  The landowners also refer us to the charge of
the court which did not submit strict liability.  They do not direct this Court to any
instruction or requested issue regarding strict liability as to Waste Disposal
or any complaint made concerning the trial court=s decision not to submit the issue or
instruction.  Rule 33.1 of the Texas
Rules of Appellate Procedure requires a timely Arequest, objection, or motion@ to preserve
error.  Tex.
R. App. P. 33.1.  We find
none.  Rather, the objections to the
charge and proposed issues, as set out in the record, show that no request for
a strict liability issue against Waste Disposal was raised.  Accordingly, the landowner=s second
cross-issue is waived.

C.  Constitutional
Challenge to Cap on Exemplary Damages








Exemplary damages awarded against a defendant may not exceed an
amount equal to the greater of two times the amount of economic damages, plus
an amount equal to any non-economic damages found by the jury, not to exceed
$750,000.00, or $200,000.00.  See Tex. Civ. Prac. & Rem. Code '
41.008(b)(1)-(2) (Vernon Supp. 2002). 
The jury awarded Soila Valdez $500,000.00 in
exemplary damages against Waste Disposal; however, after applying settlement
credits and section 41.008, the trial court reduced the exemplary damage award
to $200,000.00.

Valdez now urges, by a third cross-issue, that the cap on
exemplary damages imposed by section 41.008 of the Texas Civil Practice and
Remedies Code is unconstitutional because it violates the Texas Constitution=s open courts
provision and its separation of powers doctrine.  See id.  

1.  Open Courts Provision








The open courts provision of the Texas Constitution provides A[a]ll courts shall be open and every person for an injury done
him, and in his lands, goods, person or reputation shall have a remedy by due
course of law.@  Tex.
Const. art. I, ' 13.  AThe open courts
provision prevents the legislature from abrogating the right to assert a
well-established common law cause of action unless the reason for the
legislature=s action
outweighs the litigants= constitutional
right of redress.@  Hall v. Diamond Shamrock Ref. Co., No.
04-99-00370-CV, 2001 Tex. App. LEXIS 4217, at *35-36 (San Antonio June 27,
2001, no pet.) (citing Owens-Corning v. Carter, 997 S.W.2d 560, 573
(Tex. 1999)).  The open courts provision
does not permit a statute to restrict a common law cause of action in a way
that is unreasonable or arbitrary, in view of the statute=s purpose.  Id. 
Therefore, to establish a violation of the open courts provision, a
plaintiff must show:  (1) she has a
well-recognized common law cause of action that is being restricted; and (2)
the restriction is unreasonable or arbitrary when balanced against the purpose
and basis of the statute.  Id. at
*36.








In Hall, the court looked to the 1987 tort reform
legislation and determined that one of its purposes was to make the Texas civil
justice system more predictable.  Id.
at *37 (citing Seminole Pipeline Co. v. Broad Leaf Partners, 979 S.W.2d
730, 751 (Tex. App.BHouston [14th
Dist.] 1998, no pet.); John T. Montford and Will G.
Barber, 1987 Texas Tort Reform: The Quest for a Fairer and More Predictable
Texas Civil Justice System, 25 Hous.
L. Rev. 59, 69 (1988)).  The cap
found in section 41.008 presumably provides a measure of predictability by
narrowing the range of punitive damages awarded to a plaintiff.  Id. (citing Seminole Pipeline,
979 S.W.2d at 751).  The court also
looked at the extent to which the plaintiff=s rights were affected.  Id. 
The purpose of exemplary damages is not to restore a party=s property or
compensate for loss but rather exemplary damages are levied for the purposes of
punishment and deterrent.  Id. at
*37-38 (citing Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 17 (Tex. 1994); Seminole
Pipeline, 979 S.W.2d at 758)); see Tex.
Civ. Prac. & Rem. Code ' 41.001(5)
(Vernon 1997) (Aexemplary
damages@ include
punitive damages and means Aany damages
awarded as a penalty or by way of punishment@). 
The Hall Court ultimately determined, therefore, that because the
open courts provision of the Texas Constitution serves to protect only private
rights and interests, and because the statutory cap on exemplary damages
affects only public punishment interests, it does not infringe upon any
constitutional right held by Hall.  Hall,
2001 Tex. App. LEXIS 4217, at *37-38.

In Seminole Pipeline, the appellate court also upheld
the constitutionality of section 41.008, concluding that while a plaintiff may
be motivated to pursue the public purpose of exemplary damages in the hope of
securing such damages, those proceeds are a windfall and are certainly not a
matter of right.  Seminole Pipeline,
979 S.W.2d at 758.  The Fourteenth Court
of Appeals found that the statute did not infringe upon any constitutional
rights held by the cross-appellees in that case.  Id.

Likewise, Valdez has not shown that the limitation on exemplary
damages found in section 41.008 is unreasonable or arbitrary when balanced
against the purpose and basis of the statute, that being, exemplary damages are
levied for the purposes of punishment and deterrent.  See Hall, 2001 Tex. App. LEXIS 4217,
at *38.  We conclude, therefore, section
41.008 of the Texas Civil Practices and Remedies Code does not infringe upon
the constitution=s open courts
provision.

2.  Separation of Powers
Doctrine








Cross-appellant Valdez also contends section 41.008 usurps the
constitutional mandate of separation of powers. 
Article II, section 1, of the Texas Constitution, provides that each of
the three branches of government, the legislative, the executive, and the
judiciary Ashall be
confided to a separate body . . . and no person, or collection of persons,
being of one of these departments, shall exercise any power properly attached
to either of the others, except in the instances herein expressly permitted.@  Tex.
Const. art. II, ' 1.

Valdez argues the limitation imposed by section 41.008 usurps
the power of the court to assess the adequacy of a jury award for exemplary
damages and to alter the award.  See Moriel, 879 S.W.2d at 17 (duty of court is to ensure
defendants who deserve to be punished receive appropriate level of punishment,
while at same time prevent excessive or otherwise erroneous punishment); Fort
Worth Elevators Co. v. Russell, 70 S.W.2d 397, 408 (Tex. 1934) (amount of
exemplary damages allowed must be reasonably proportioned to actual damages
found); see also Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35,
39 (Tex. 1998) (Kraus factors are to be considered in evaluating
exemplary damage award).[2]  Valdez contends the judicial function of remittitur cannot be performed when the legislature reduces
punitive damages to a formula that prevents the judiciary from evaluating the
conduct involved in each individual case.








Any constitutionality review begins with the presumption that
the statute is valid and that the legislature has not acted unreasonably or
arbitrarily.  Barshop
v. Medina County Underground Water Conserv. Dist.,
925 S.W.2d 618, 629 (Tex. 1996).  The
law-making power of the people is vested in our state legislature by article
III, section 1 of the Texas Constitution. 
Tex. Const. art. III, ' 1.  The power of the legislature includes the
power to make, alter, and repeal laws when such power is not expressly or
impliedly forbidden by other provisions of the constitution.  Walker v. Baker, 145 Tex. 121, 128,
196 S.W.2d 324, 328 (1946).

It is clear, by the adoption of chapter 41 of the civil
practice and remedies code, the legislature has used its law-making power to
regulate the award of exemplary damages. 
For example, chapter 41 applies whenever Aa claimant seeks exemplary damages
relating to a cause of action.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 41.002(a)
(Vernon Supp. 2002).

[Chapter 41]
establishes the maximum exemplary damages that may be awarded in an action
subject to this chapter, including an action for which exemplary damages are
awarded under another law of this state. 
This chapter does not apply to the extent another law establishes a
lower maximum amount of exemplary damages for a particular claim.

 








Id. at '
41.002(b).  If there is a conflict
between chapter 41 and another statute, chapter 41 controls.  Id. at ' 41.002(c).  Except where there are nominal damages which
result from malice and in wrongful death claims involving workers= compensation,
exemplary damages may be awarded only if damages other than nominal damages are
awarded.  See id. at ' 41.004; Wright
v. Gifford-Hill & Co., 725 S.W.2d 712, 714 (Tex. 1987).  Chapter 41 also disallows recovery of
exemplary damages by Aa claimant who
elects to have his recovery multiplied under another statute.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 41.004(b)
(Vernon Supp. 2002).  Furthermore, we note
that chapter 41 includes the Kraus factors as evidence that shall be
considered by the trier of fact in determining the
amount of exemplary damages.  Id.
at '
41.011(a)(1)-(5); see Alamo Nat=l. Bank v.
Kraus,
616 S.W.2d 908, 910 (Tex. 1981).  Through
this section, the legislature has acknowledged the role of the trier of fact in determining the amount of exemplary
damages, yet has exercised its law-making power to limit such damages.

Valdez urges us to follow the courts in Best v. Taylor Mach.
Works, 689 N.E.2d 1057 (Ill. 1997), and Ohio Acad. of Trial Lawyers v. Sheward, 715 N.E.2d 1062 (Ohio 1999), which have
determined that exemplary damages cap provisions in the respective states are
unconstitutional because they invade the power of the judiciary to limit
excessive damage awards.  Sheward, 715 N.E.2d at 1080; Best, 689 N.E.2d
at 1076.  Neither case, however,
acknowledges the legislature=s
constitutional power to make, amend, alter, and abolish laws without violating
the principle of separation of powers, the reasoning we conclude applies in
this case.  See Walker, 196 S.W.2d
at 328; see also Tex. Const.
art. III, ' 1 (law-making
power vested in state legislature).  Accordingly,
we decline to follow these cases.








We find no language in section 41.008, the section about which
Valdez complains, that attempts to limit the exercise of the judiciary=s
constitutional powers or jurisdiction. 
The statute at issue only limits the amount of exemplary damages which,
as the Hall Court concluded, is an attempt by the legislature to make
the Texas civil justice system more predictable by narrowing the range of
exemplary damages awarded to a plaintiff. 
Hall, 2001 Tex. App. LEXIS 4217, at *37.  The trial court continues to have the power
to remit damages within the confines of the statute.  The legislature has not acted unreasonably or
arbitrarily.  See Barshop,
925 S.W.2d at 629.  Because we have
determined that the cap on exemplary damages does not violate the
constitutional mandates argued in this appeal, we overrule cross-appellant
Valdez=s third
cross-issue.

VI.  Conclusion      

The judgment of the trial court is reversed and judgment is
rendered that Valdez take nothing against Waste Disposal for mental anguish
damages.  In all other respects, the
judgment is affirmed.                                                                    

NELDA
V. RODRIGUEZ

Justice

 

Publish.

Tex.
R. App. P. 47.3.

 

Opinion delivered and
filed

this 2nd day of May,
2002.

 











[1]Waste
Disposal argues by its third issue that the award of exemplary damages cannot
stand absent an award of actual damages. 
However, by one paragraph, it generally cites to Louisiana-Pacific
Corp. v. Andrade, 19 S.W.3d 245, 247-48 (Tex. 1999), and Mobile Oil
Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex.
1998), and contends exemplary damages may not be recovered in this case because
there is no evidence in the record to support the jury=s
finding regarding malice.  This is the
only reference Waste Disposal makes to this argument.  It does not discuss relevant facts to support
this argument, or provide this Court with additional authority.  Tex.
R. App. P. 38.1(h).  "We will
not perform an independent review of the record and applicable law to determine
whether the error complained of occurred."  Happy Harbor Methodist Home, Inc. v. Cowins, 903 S.W.2d 884, 886 (Tex.
App.BHouston
[1st Dist.] 1995, no writ).  Thus, we
consider this argument waived.





[2]The
Kraus factors to consider
include:  (1) nature of wrong; (2)
character of conduct involved; (3) culpability of wrongdoer; (4) situation and
sensibilities of parties; and (5) extent to which defendant=s
conduct offends public=s sense of
justice and propriety).  Alamo Nat=l.
Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981).