**In re REZULIN PRODUCTS LIABILITY LITIGATION.**

This paper relates to: 00 Civ. 7632, 01 Civ. 0049, 01 Civ. 3560, 01 Civ. 5763, 01 Civ. 5764, 01 Civ. 6053, 01 Civ. 6054, 01 Civ. 6065, 01 Civ. 6057, 01 Civ. 6058, 01 Civ. 6059, 01 Civ. 6060, 01 Civ. 6062, 01 Civ. 8159, 01 Civ. 10562, 01 Civ. 10563, 01 Civ. 10564, 01 Civ. 11878, 02 Civ. 1719, 02 Civ. 1724, 02 Civ. 9952.

**MDL No. 1348.**
**Master File No. 00 Civ. 2843(LAK).**

United States District Court,
S.D. New York.

March 15, 2005.

See also 2005 WL 583751.

Zoe B. Littlepage, Joshua Brockman, Houston, TX, Grace S. Elmore, Beaumont, TX, Littlepage & Associates P.C., Michael T. Gallagher, John H. Kim, The Gallagher Law Firm, Houston, TX, for Plaintiffs.

David Klingsberg, Maris Veidemanis, Bert L. Slonim, Wendy S. Dowse, Kaye Scholer LLP, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Defendants Pfizer, Inc. and its affiliates ("Pfizer") move for summary judgment dismissing the claims of nine plaintiffs whose Fact Sheet responses do not assert that they suffered any injury, or who claim there only that they fear future injury, as a result of their ingestion of Rezulin. They argue that plaintiffs who do not claim any injury cannot meet the standing requirements of Article III of the Constitution, and, even if they could, do not state a claim under the relevant governing law. Pfizer asserts further that plaintiffs who allege only fear of future injury do not have cognizable claims under the laws of their respective states.

### I

These actions are among thousands in state and federal courts arising from the use of the prescription diabetes medication Rezulin, formerly manufactured by defendants Warner–Lambert Co. and its Parke–Davis division. Most assert claims of personal injury. More than one thousand have been consolidated here for pretrial proceedings by the Judicial Panel on Multidistrict Litigation.[1]

At the outset of the litigation and after obtaining extensive input from counsel, the

---

1. Many were commenced in a state court and removed by defendants on the basis of diversity of citizenship.

Court approved a so-called Fact Sheet seeking case specific information such as when the plaintiff took Rezulin, the nature of the medical condition for which it was taken, the nature of the alleged injuries, and the identities and addresses of medical providers, employers and insurers.[2] Each plaintiff was ordered to complete a Fact Sheet under oath and to return it to the defendants with completed authorizations for medical, insurance and employment records. The responses are treated as interrogatory answers and are intended to enable the defendants to investigate plaintiffs' claims and to proceed with depositions, motions and other appropriate measures.[3]

Fact Sheet question I.C.1 asks each plaintiff: "Do you claim that you have suffered a bodily injury as a result of Rezulin use?" If so, the next question asks the plaintiff to "state the nature of the injury or injuries which you claim."[4] If not, the plaintiff is to state how he or she claims to have been injured by Rezulin.[5] Nine plaintiffs who answered "no" to the bodily injury question are subjects of this motion.[6] Three of those did not specify any alleged injury[7] and another six claim fear of future illness as their only injury.[8]

At no point did any of these plaintiffs amend or update their Fact Sheet responses to claim a bodily or any other injury from Rezulin or that they suffered an injury other than the fear of future injury. Accordingly, at the close of discovery, Pfizer moved for summary judgment dismissing their complaints.

## II

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[9] The moving

2. Pretrial Order No. 4 ("PTO 4") ¶¶ 1, 3.

3. Pretrial Order No. 2 ("PTO 2") ¶ 2.5.2.1

4. Fact Sheet question I.C.2.

5. *Id.* ¶ I.C.3.

6. Many of the plaintiffs initially subject to this motion have settled with defendants. Accordingly, the motion has been withdrawn without prejudice as to those plaintiffs, who are listed in the appendix.

7. Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as to No–Injury and Fear of Future Injury Claims ("Def.Mem.") 2; Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgment ("Def. 56.1 St."), Ex. B.

Pfizer's statement of undisputed fact pursuant to Local Civil Rule 56.1 lists each plaintiff subject to this motion, the state in which he or she resided when he or she was prescribed and took Rezulin, and the responses to the relevant Fact Sheet questions. Plaintiffs do not respond directly to Pfizer's statement. Instead, they submitted statements of disputed facts, purportedly pursuant to Local Civil Rule 56.1.

Plaintiffs' counter statements are inadequate and fail to comply with Local Civil Rule 56.1 and Pretrial Order No. 94, which require the party opposing summary judgment to submit a statement that should consist of a paragraph-by-paragraph response to the movant's 56.1 statement, much like an answer to a complaint. *See* LOCAL CIVIL RULE 56.1(b); *Archie Comic Pubs., Inc. v. DeCarlo*, 258 F.Supp.2d 315, 319 (S.D.N.Y.2003), *aff'd substantially on opinion below*, 88 Fed.Appx. 468, 2004 WL 393154 (2d Cir.), *cert. den.*, — U.S. ——, 125 S.Ct. 50, 160 L.Ed.2d 18 (2004). Where, as here, the plaintiffs have not disputed any of the defendants' numbered paragraphs, they are deemed admitted for the purposes of this motion. *See* LOCAL CIVIL RULE 56.1(c).

8. Def. 56.1 St., Ex. B.

9. FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir.2000).

party has the burden to demonstrate the absence of a genuine issue of material fact,[10] and the Court must view the facts in the light most favorable to the nonmoving party.[11] Where, as here, the nonmoving party would have the burden of proof at trial, ordinarily it is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.[12] In that event, the nonmoving party must come forward with admissible evidence [13] sufficient to raise a genuine issue of fact in order to avoid summary judgment.[14]

Defendants assert that plaintiffs have failed to adduce any admissible evidence that they have suffered a physical injury. Without evidence of a physical injury, they contend, neither group of plaintiffs can establish a claim under the relevant governing law. Plaintiffs respond that their Fact Sheet responses are not admissible and that their expert reports raise a genuine issue of fact.

## A. Evidence of Injury

### 1. Plaintiffs' Fact Sheet Responses Are Admissible

■ Plaintiffs first assert that their responses to the Fact Sheet questions are not admissible evidence of whether or how they suffered bodily injury from Rezulin because plaintiffs are not experts and therefore are unqualified to testify as to their injuries.[15] They rely on *Garside v. Osco Drug, Inc.*[16] for this proposition,[17] but it does not support their argument.

In *Garside*, the plaintiff was prescribed amoxicillin for an ear infection, which she took with phenobarbital that previously had been prescribed to prevent seizures.[18] After taking these medications, she developed a rash and later was diagnosed with toxic epidermal necrolysis which left her hearing impaired and blinded and badly scarred her.[19] The only evidence of causation that plaintiff submitted in opposing summary judgment was an answer to an interrogatory by the plaintiff's mother that stated that an expert would testify that plaintiff had suffered an adverse drug reaction that induced the toxic epidermal necrolysis.[20] The court held that the inter-

---

10. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

11. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir.1997).

12. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Virgin At. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir.2001).

13. *See, e.g., Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123–24 (2d Cir.2001).

14. *E.g., Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995)("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.") (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548).

15. Littlepage Plaintiffs Response and Memorandum in Opposition to Defendants' Motion for Summary Judgment as to Non–Liver Related Claims and No–Injury Claims ("Littlepage Mem.") 5; Plaintiffs' Combined Response and Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment as to Non–Injury, Non–Liver Injury and Fear of Future Injury Claims ("Gallagher Mem.") 6–7.

16. 895 F.2d 46 (1st Cir.1990).

17. Littlepage Mem. 5; Gallagher Mem. 4.

18. *Garside*, 895 F.2d at 47.

19. *Id.*

20. *Id.* at 49.

rogatory answer was not admissible because it was not based on personal knowledge: whatever plaintiff's mother had been told the expert would say was hearsay.[21] Although the court noted that the plaintiff's mother did not have any scientific knowledge as to causation, this merely underscored the fact that her affidavit regarding the doctor's expected testimony was not based on personal knowledge.[22]

The situation in *Garside* is very different from the one at hand. Plaintiffs there had no admissible evidence of causation. Here, the Fact Sheet questionnaire asked plaintiffs to list the injuries they claimed were caused by Rezulin. Plaintiffs doubtless have personal knowledge of the injuries they claim to have suffered, even if, as plaintiffs correctly assert, they are not qualified to testify to causation. Indeed, hundreds and, perhaps, thousands of plaintiffs in this MDL action have had no difficulty whatsoever in identifying their claimed injuries in Fact Sheet responses.

Plaintiffs contend also that even if the Fact Sheet responses are admissible, they are not conclusive or binding.[23] But this argument misses the mark.

■ The Fact Sheet responses, like any interrogatory answers, are admissions and therefore admissible in evidence.[24] They

are to be considered along with affidavits and other evidence to determine whether there is a genuine issue of fact as to whether plaintiffs sustained any injuries.[25]

## 2. *Plaintiffs' Proposed Expert Evidence*

Plaintiffs have submitted expert reports by Glenn Wilson, Ph.D., Herbert Rubin, M.D., Steven Schang, M.D., and John Gueriguian, M.D., all of which assert that Rezulin can injure the mitochondria of cells with which it comes into contact.[26] Dr. Rubin opines that Rezulin "is a hepatoxic drug that has the ability to cause damage to the liver of humans in a variety of different ways"[27] and further contends that "Rezulin is a direct mitochondrial toxin, which poisons the mitochondria of the cells that it comes into contact with."[28] Dr. Schang concludes similarly that "Rezulin will injure the mitochondria of every cell it comes in contact with."[29] Dr. Wilson asserts that Rezulin caused toxic cellular injury to all recipients.[30] He does not argue, however, that mitochondrial damage is irreversible or that this type of injury has detrimental consequences for all patients.[31]

Assuming, without deciding, that these expert reports are admissible,[32] they raise three questions. First, are they sufficient to raise an issue of fact as to whether plaintiffs have suffered subcellular injuries

---

21. *Id.* at 50.

22. *Id.* The Second Circuit similarly has held that a hearsay affidavit may not be substituted for personal knowledge to defeat summary judgment. *See, e.g., Sellers v. M.C. Floor Crafters*, 842 F.2d 639, 643 (2d Cir.1988).

23. Littlepage Mem. 10–11; Gallagher Mem. 8. They assert also that the answers to the Fact Sheets may be withdrawn, but have not done so and therefore this argument is irrelevant.

24. FED.R.EVID. 801(d)(2)(A).

25. FED.R.CIV.P. 56(e).

26. All the plaintiffs subject to this opinion rely on these reports.

27. Rubin Aff. ¶ 11.

28. *Id.* ¶ 10(I).

29. Schang Aff. ¶ 3.

30. Wilson Aff. 1/14/04 ¶ 3(a).

31. Dowse Reply Aff., Ex. E, Wilson Dep. at 141, 144.

32. Pfizer asserts that the plaintiffs' expert evidence is insufficiently reliable to pass the gatekeeping determination of FED.R.EVID P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny. Defendants' Supplemental Reply Mem. of Law in Support of Motions for Summary Judgment as to (1) Non–Liver–Related Claims and (2) No–Injury and Fear of Future Injury Claims by Plaintiffs Represented By Littlepage and Assocs. ("Def. Littlepage Reply") 9–10.

from their use of Rezulin? Second, if so, is a subcellular injury sufficient to establish standing for purposes of Article III? Third, would subcellular injury be compensable under the governing law?

### 3. Plaintiffs' Alleged Subcellular Injuries

■ Dr. Wilson's report, were it admissible, would present a finding that "[e]very person who took Rezulin and showed any reduction in blood sugar levels has a documented, confirmed, scientifically proved cellular injury because the drug's mechanism of lowering blood sugar is mitochondrial damage." [33] In consequence, assuming that the expert reports would be admissible, plaintiffs have raised an issue of fact that they each have suffered a mitochondrial injury. [34]

### B. The "No–Injury" Plaintiffs

#### 1. Plaintiffs Have Standing

Defendants' claim that the plaintiffs who did not claim any injury in their Fact Sheet responses lack standing, as they have not suffered an injury-in-fact. But this need not detain us long.

■■ For purposes of standing, an injury-in-fact is an invasion of a legally protected interest that is "concrete and particularized" and "actual and imminent." [35] Assuming the admissibility of the expert reports, plaintiffs have raised a genuine issue of fact that they each have suffered injury to their mitochondria. Such an injury is an invasion of plaintiffs' interests in bodily integrity and therefore sufficient to establish standing.

### 2. Texas Law

■ Pfizer next argues that even if plaintiffs have standing, their claims should be dismissed because their alleged subcellular injuries do not satisfy the injury element of product liability claims under the governing law, which for these plaintiffs is that of Texas. [36]

As the Texas Supreme Court has not addressed directly whether subcellular injuries that do not manifest any clinical detriment are compensable injuries, this Court must make its best estimate as to how that court would resolve the issue. [37]

Texas provides that "in order to be compensable in damages or otherwise actions wrongfully or negligently committed must have occasioned injurious consequences." [38] Plaintiffs contend that any injury, however

---

33. Littlepage Mem. 19 (quoting Wilson Aff.); Gallagher Mem. 16 (quoting Wilson Aff.).
   Although plaintiffs do not put forth affidavits or other evidence showing that their blood sugar decreased while on Rezulin, defendants do not dispute this point. In any event, a jury reasonably could presume that Rezulin was effective in reducing their levels of blood sugar from the fact that plaintiffs' doctors did not discontinue Rezulin.

34. FED.R.EVID. 702 provides that expert testimony is admissible only where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

35. Lujan v. Defenders of the Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

36. Def. Littlepage Reply 10–12.

37. See Travelers Insurance Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir.1994); Bailey Employment System, Inc. v. Hahn, 655 F.2d 473, 477 (2d Cir.1981) ("Where there is an absence of state authority on an issue presented to a federal court sitting in diversity ... the federal court must make an estimate of what the state's highest court would rule to be its law.").

38. Campbell v. St. Paul Fire & Marine Ins., Co., 480 S.W.2d 233, 235 (Tex.Civ.App.1972).

minimal, is sufficient.[39] They rely on *Bailey v. American General Insurance Co.*[40] for the proposition that damage under Texas law "embraces direct physical injury to a cell, tissue, organ or organ system."[41] In consequence, plaintiffs contend, Dr. Wilson's assertion that Rezulin caused mitochondrial injury to each recipient is sufficient to establish that they have suffered a compensable injury.[42]

In *Bailey*, the plaintiff sought compensation under the workers' compensation law, which provides recovery for disabilities stemming from "damage or harm to the 'physical structure of the body.' "[43] Bailey claimed to suffer from a debilitating neurosis that he developed after an accident in which the scaffold he was working on collapsed and, though he was saved by a cable, he witnessed the deadly eight story fall of his co-worker. The defendant argued that this mental injury was not compensable because the workers' compensation law required a direct injury.[44]

While acknowledging that the concept of damage embraces direct injuries to the cells, muscles and organs, the court rejected defendant's interpretation, explaining that harm to the physical structure includes also "impairment of use or control of physical structures, directly caused by the accident."[45] It held that whether the damage resulted from direct physical injury or from some indirect injury, the salient fact was that either type of injury could produce the same "disabling signs and symptoms."[46]

Although the court's definition of damage in *Bailey* suggests that direct subcellular injury may be compensable, the context of the opinion makes clear that it is compensable only because it produces a disabling sign or symptom. The court's reasoning in *Bailey* therefore does not support plaintiffs' contention that a subcellular injury without any clinically manifested detriment is compensable under Texas law.[47] Moreover, even if its *dicta* regard-

39. Littlepage Mem. at 13.

40. 154 Tex. 430, 279 S.W.2d 315 (1955).

41. *Id.* at 319.

42. Littlepage Mem. 3–4.

43. *Bailey*, 279 S.W.2d at 318 (quoting VERNON'S TEXAS CIV. ST. ART. 8309).

44. *Id.*

45. *Id.* at 319.

46. *Id.* The Texas Supreme Court subsequently limited the rule of *Bailey* to accidental injuries that can be traced to a specific time and place. *See Trans. Ins. Co. v. Maksyn*, 580 S.W.2d 334, 336–37 (1979).

47. Plaintiffs rely also on *Ford Motor Company v. Bland*, 517 S.W.2d 641 (Tex.Civ.App.— Waco 1974), and *Coca Cola Bottling Co. v. McAlister*, 256 S.W.2d 654 (Tex.Civ.App. 1953), for the proposition that any injury, however slight, meets the physical injury re-

quirement to establish a product liability claim under Texas law. But their reliance is misplaced. The plaintiffs in both cases suffered manifest injuries.

In *Bland*, the court upheld a verdict for future physical pain and mental anguish damages where the evidence established that:

"plaintiff received physical injuries on virtually every part of his body; that among them was 'a closed head injury with cerebral contusions' with total disruption of some of the nerve cells which cannot heal; that he was hospitalized four weeks; that he has marked weakness of his left side and walks stiff-legged on the left because of the brain injury and the resulting impairment of the nerve cells which supply his left leg; that he has marked impairment of his judgment and insight; that he received a 'terrible head injury,' 'organic brain damage'; that his 'intellectual functioning' is severely impaired; that his ability to store information in his memory and 'to retain recently acquired material,' is severely impaired; and that he is unable to do the simplest

ing damage were applicable, the Texas Supreme Court's more recent decision in *Temple–Inland Forest Products Corp. v. Carter*,[48] suggests that an asymptomatic subcellular injury is not a compensable physical injury.

In *Temple–Inland Forest Products*, the court considered whether individuals who had been exposed to asbestos could recover for fear of developing asbestos-related cancer. Since Texas generally does not allow recovery for negligent infliction of emotion distress absent a physical injury,[49] plaintiffs alleged that they suffered subcellular injury as a result of the inhalation of asbestos fibers. Even accepting plaintiffs' contention that they suffered cellular injury from the asbestos fibers, however, the court held that such an injury was not sufficient when it had not produced any disease.[50] The court explained that where "bodily injury is at most latent and any eventual consequences uncertain," the case for allowing recovery is weak.[51] Moreover, it concluded that policy concerns weighed against compensating this type of injury because plaintiffs might compete against those with manifest diseases for the legal system's limited resources.

Although the court's discussion of subcellular injury in *Temple–Inland Forest Products* was in the context of whether it was a sufficient physical injury for purposes of recovering emotional anguish damages, its reasoning applies equally to a plaintiff who alleges only asymptomatic subcellular injury.[52] Plaintiffs' allegations of subcellular injuries here present the same problems of proof and resource allocation as in the cases of those who allege emotional injuries as well. If plaintiffs' injuries do not produce any disease or a clinically observable injuries, any recovery would be a windfall. Moreover, allowing recovery on the basis of asymptomatic subcellular injury appears to be very much against the interests of plaintiffs. Even if a plaintiff prevailed in such a case, any recovery probably would be minimal. But a judgment in such a case, whether for or against the plaintiff, would foreclose, under familiar principles of former adjudication, any future suit based on the same exposure.[53] Thus, allowing suit for asymptomatic subcellular injury would preclude a plaintiff who later developed substantial

---

math problems." *Bland*, 517 S.W.2d at 645.
The plaintiff in *McAlister* suffered from a sore throat, "spit blood for several days and for a period of three weeks spit clotted blood" and "could only talk in whispers for several days [and has a] lump or flap [that] still bothers his talking." *McAlister*, 256 S.W.2d at 655.

**48.** 993 S.W.2d 88 (Tex.1999).

**49.** *Id.* at 91.

**50.** *Id.* at 92.

**51.** *Id.* at 93.

**52.** The court limited its decision to those cases where future injury was uncertain. It noted that although asbestos was a carcinogen, exposure-even significant exposure-does not always result in disease. *Id.* at 95. Where the consequences of exposure to a toxic substance were more certain, the court concluded, it could arrive at a different result.

> This coda does not change the analysis here. Plaintiffs do not provide any evidence that they are at any increased risk of developing a mitochondrial disease or that their alleged mitochondrial damage will lead to any manifest impairment.

**53.** *See Pustejovsky v. Rapid–American Corp.*, 35 S.W.3d 643, 646–50 (Tex.2000) (explaining the application of these principles under Texas law).

> Texas allows a plaintiff who has brought a claim for one asbestos-related disease to bring a separate action if he or she subsequently develops a distinct and malignant asbestos-related disease from the same exposure, but has limited this claim splitting

injuries traceable to the exposure from recovering the full measure of his or her damage.

The Texas Supreme Court's concerns about the problems of compensating subclinical and possibly speculative injuries are consistent with those of other jurisdictions. Many courts have held that there is some minimum of harm required for an injury to be compensable.[54] In *Schweitzer v. Consolidated Rail Corp.*,[55] for example, the Third Circuit concluded that "subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law."[56]

In all the circumstances, it is unlikely that Texas would allow recovery for a subcellular injury absent any clinically manifest detriment as a compensable injury. Plaintiffs' allegations of mitochondrial damage therefore fail to raise a genuine issue of fact that they have suffered a compensable injury under Texas law.

### C. *Fear of Future Injury*

Pfizer seeks also summary judgment dismissing the claims of certain plaintiffs whose only alleged injury is fear of future injury from their use of Rezulin. Pfizer asserts that plaintiffs' claims fail under the laws of their respective states, which recognize fear of future injury claims only where plaintiffs have suffered a manifest physical injury or other special circumstances are present.[57]

#### 1. *Texas Plaintiffs*

■ Four plaintiffs who claim only emotional distress from fear of future injury are governed by Texas law. Texas limits recovery for fear of future injury to cases where plaintiffs have suffered a manifest physical injury.[58] As discussed above, mitochondrial injury, the only injury of which there is even arguably any evidence, is not a manifest physical injury and therefore does not ground a claim for emotional distress.

#### 2. *Louisiana Plaintiffs*

■ The remaining plaintiffs are governed by the Louisiana Products Liability Act ("LPLA"), which establishes the "exclusive theories of liability for manufacturers for damages caused by their products."[59] "Damage" is defined under the LPLA as "all damage caused by a product, including survival and wrongful death

---

to the context of asbestos exposure. *Id.* at 653–54.

54. *See Ball v. Joy Mfg. Co.*, 755 F.Supp. 1344, 1368 (S.D.W.Va.1990) (collecting cases). *But see Werlein v. United States*, 746 F.Supp. 887 (D.Minn.1990) (whether subcellular injuries are sufficient to establish present harm question for trier of fact), *vacated in part on other grounds*, 793 F.Supp. 898 (D.Minn.1992); *Brafford v. Susquehanna Corp.*, 586 F.Supp. 14 (D.Colo.1984) (question of whether asymptomatic chromosome damage is present injury one for the jury); *Bryson v. Pillsbury Co.*, 573 N.W.2d 718 (Minn.App.1998)(same).

55. 758 F.2d 936 (3d Cir.1985).

56. *Id.* at 942.

57. Def. Mem. 15, 18.

58. *Temple–Inland Forest Products*, 993 S.W.2d at 92–93.

59. La.Rev.Stat. Ann. § 9:2800.52 (West 1997). This exclusivity provision limits the theories available to plaintiffs seeking to recover against a manufacturer of an allegedly defective product. *Lavergne v. America's Pizza Co.*, 838 So.2d 845, 847 (La.App. 3 Cir.2003); *Simon v. Am. Crescent Elevator Co.*, 767 So.2d 64, 68 (La.App. 4 Cir.2000), *reh'g den.*, *writ. den.*, 773 So.2d 726 (La.2000). Under the LPLA, a manufacturer may be held liable only if the plaintiff establishes that he or she has suffered damage caused by an unreasonably dangerous characteristic of the product when used in a reasonably anticipated manner. La. Rev.Stat. Ann. § 9:2800.54. A defendant may be liable if the product is: (1) unreasonably dangerous in construction or composition; (2) unreasonably dangerous in design; (3) unreasonably dangerous because of inadequate warning; or (4) unreasonably dangerous because of non-conformity to express warranty. *See id.* §§ 9:2800.55–.58.

damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery."[60]

Pfizer first argues that negligent infliction of emotional distress is not among the four theories of liability under the LPLA and that these claims therefore must be dismissed.[61]

To be sure, the LPLA does not recognize the theory of negligent infliction of emotional distress.[62] But plaintiffs here seek recovery for emotional injury, not a theory of liability. Their argument may be construed as claiming that the unreasonably dangerous character of Rezulin caused their alleged mental distress. The question therefore is whether Article 2315 provides recovery for this type of injury.[63]

Absent a manifest injury, Article 2315 permits recovery for emotional damages if plaintiffs establish that their claim "is not spurious by showing a particular likelihood of genuine and serious mental distress arising from special circumstances."[64] To survive summary judgment, therefore, plaintiffs must raise a genuine issue of fact that they have suffered a manifest injury or that their claims are not spurious.

### a. Manifest Injury

Plaintiffs first assert that their alleged subcellular injuries are sufficient to satisfy the manifest injury requirement.[65]

The Supreme Court of Louisiana encountered a similar argument in *Bonnette*

---

**60.** *Id.* § 9:2800.53. Article 2315 does not explicitly define damage. Rather, it provides that:

"A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

"B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease. Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged." La. Civ.Code Ann. Art. 2315(B) (West 1996).

**61.** Def. Gallagher Reply 6.

**62.** *See* La.Rev.Stat. Ann. § 9:2800.54; *Grenier v. Medical Eng'g*, 99 F.Supp.2d 759, 763 (W.D.La.2000)(citing *Jefferson v. Lead Indus. Assoc., Inc.*, 930 F.Supp. 241, 243 (E.D.La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir.1997)).

**63.** La.Rev.Stat. Ann. § 9:2800.53.

**64.** *Bonnette v. Conoco, Inc.*, 837 So.2d 1219, 1234 (La.2003) (citing *Moresi v. State Dept. of Wildlife & Fisheries*, 567 So.2d 1081 (La. 1990)).

Plaintiffs argue also that this rule is inapplicable as they have alleged fraud claims. *See* Gallagher Mem. 31. But this argument is without merit, see *infra*.

**65.** *Id.*

The cases plaintiffs cite for this proposition do not support their contention. In *Perry–Rogers v. Obasaju*, 282 A.D.2d 231, 723 N.Y.S.2d 28 (1st Dep't 2001), the Appellate Division, applying New York law, held that a plaintiff who suffered emotional distress as the result of a doctor's negligent implantation of her embryo in another woman could recover for her emotional injuries absent physical harm. Inasmuch as this case does not address the meaning of "damage" under the LPLA, it is inapposite. *Buzniak v. County of Westchester*, 156 A.D.2d 631, 549 N.Y.S.2d 130 (2d Dep't 1989), similarly is unhelpful to the plaintiffs. In that case, the Appellate Division held that a plaintiff could recover for her physical and emotional injuries as a result of a negligently performed amniocentesis that resulted in a staph infection and led to the spontaneous abortion of her fetus.

In *M.M.H. v. United States*, 966 F.2d 285 (7th Cir.1992), the Seventh Circuit, applying Wisconsin law, held that a woman who had been told she had H.I.V. and then not informed that the test result had been mistaken could recover for emotional distress because her authentic suicide attempt met Wisconsin's requirement that emotional injuries be accompanied by physical injuries.

*v. Conoco.*[66] Plaintiffs there had bought asbestos-contaminated topsoil from defendant. Asbestos dust from the soil was tracked into their homes, so plaintiffs were exposed to the dust, though not in large quantities.[67] Their evidence further indicated that they had a slightly increased risk of developing asbestos-related cancer as a result of their exposure to asbestos.[68] Although the court recognized that the inhalation of asbestos fibers could result in immediate cellular injury, it concluded that such an injury was insufficient to meet the manifest physical injury requirement to recover for emotional injuries.[69] It explained that injury from slight asbestos exposure was too speculative and uncertain to be a manifest physical injury.

To be sure, plaintiffs' exposure to Rezulin arguably was more significant than was the exposure at issue in *Bonnette*. However, their alleged physical injuries suffer from the same conceptual problems.

First, there is no evidence that plaintiffs' alleged injuries have manifested any clinically observable detriment. Indeed, there is no evidence that plaintiffs' alleged mitochondrial damage was permanent or irreversible.

Second, like the plaintiffs in *Bonnette*, any future consequences from plaintiffs' alleged injuries are purely speculative.

Plaintiffs' alleged mitochondrial damage therefore is not a manifest injury.

### b. *Special Circumstances*

Undaunted, plaintiffs assert that special circumstances justify a conclusion that their claims are not spurious because they give rise to "a particular likelihood of genuine and serious mental distress."[70]

The first contention is that the very fact of plaintiffs' exposure to Rezulin creates a triable issue of fact that their emotional injuries are genuine. They rely *Nesom* v. *Tri Hawk International*,[71] in which the Fifth Circuit, applying Louisiana law, held that a plaintiff who was afraid that he may have received human durra contaminated with the agent that causes Creutzfeld–Jacob disease, a fatal brain disorder, could not recover for his fear because he could not show that he actually had been exposed to the contaminated durra.[72] It explained that plaintiff could not establish that his fear was genuine absent actual exposure.

*Tri Hawk* thus establishes that exposure is a condition necessary to recovery. But it does not speak to whether exposure is sufficient. And the Louisiana Supreme Court concluded that exposure, by itself, is not an adequate guarantor that claims are genuine to permit recovery in a case like this.[73]

---

66. 837 So.2d 1219 (La.2003).

67. *Id.* at 1232–33.

68. The trial court awarded damages to plaintiffs for "physical injury and an increased risk of developing asbestos related cancer." *Id.* at 1228 n. 5. As the Louisiana Supreme Court noted, however, the "trial court's award was not for an actual physical injury as that term is customarily used, but was instead for an increased risk of developing asbestos-related cancer." *Id.*

69. *Id.* at 1234

70. *Bonnette*, 837 So.2d at 1234.

71. 985 F.2d 208 (5th Cir.1993).

72. *Id.* at 211.

73. *Bonnette*, 837 So.2d at 1236. Indeed, even in a prior case that upheld medical monitoring damages for plaintiffs who had significant exposure to asbestos, the court required also that they satisfy seven other criteria as well. *See Bourgeois v. A.P. Green Indus. Inc.*, 716 So.2d 355 (La.1998). The Louisiana legislature since has overruled this decision and denied damages for medical monitoring absent a present physical injury.

Plaintiffs next contend that their fear of future injury from Rezulin is reasonable and that the reasonableness of their concern serves as an indication of the seriousness of their fear. But the Louisiana Supreme Court has rejected this argument as well, explaining that a trial judge's consideration of the reasonableness of a plaintiff's fear is "legal error." [74]

Plaintiffs therefore have failed to establish that their alleged fear of future injury is compensable.

### D. *Economic Injuries*

The plaintiffs governed by Louisiana law claim also that they have sustained economic injuries and that their claims for fraud and redhibition should survive summary judgment. [75]

#### 1. *Fraud*

■ Plaintiffs contend that Pfizer fraudulently induced them into purchasing a defective product and that they suffered economic damages as a result. [76] Pfizer counters that this theory of liability is inconsistent with the LPLA and therefore must be dismissed. [77]

The LPLA permits recovery of all damage caused by an allegedly defective product, including "damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled 'Redhibition,' does not allow recovery for such damage or economic loss." [78] Hence, the LPLA governs plaintiffs' claim for economic damages other than redhibition. Pfizer therefore would be liable for these alleged injuries only if they were caused by a product that is (1) unreasonably dangerous in construction or composition, [79] (2) unreasonably dangerous in design, [80] (3) unreasonably dangerous because of inadequate warning, [81] or (4) unreasonably dangerous because of non-conformity to express warranty. [82]

Louisiana state and federal courts have held that fraud in the marketing of products and other theories of liability for intentional acts are not among the approved theories of the LPLA. [83] The LPLA's exclusivity provision therefore precludes such claims against manufacturers. [84]

#### 2. *Redhibition*

■ Redhibition is the avoidance or rescission of a sale on account of a defect in the product that either renders the product completely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have

---

74. *Bonnette*, 837 So.2d at 1236.

75. Gallagher Mem. 7, 32.

76. *Id.* at 5, 32.

77. Defendants Reply Memorandum of Law in Support of Motions for Summary Judgment as to Non–Liver–Related Claims and No–Injury and Fear of Future Injury Claims by Plaintiffs Represented by the Gallagher Law Firm ("Def. Gallagher Reply") 5.

78. *Id.*

79. La.Rev.Stat. Ann. § 9:2800.55.

80. *Id.* § 9:2800.56.

81. *Id.* § 9:2800.57.

82. *Id.* § 9:2800.58.

83. *E.g., Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 262 (5th Cir.2002); *Grenier v. Medical Eng'g Corp.*, 99 F.Supp.2d 759 (W.D.La.2000), *aff'd*, 243 F.3d 200 (5th Cir. 2001); *Jefferson v. Lead Industries Ass'n, Inc.*, 930 F.Supp. 241, 245 (E.D.La.1996), *aff'd*, 106 F.3d 1245 (5th Cir.1997); *Arabie v. R.J. Reynolds Tobacco Co.*, 698 So.2d 423 (La.App. 5 Cir.1997).

84. *See Grenier*, 99 F.Supp.2d at 763 (summarily dismissing plaintiff's fraud claims as inconsistent with the LPLA); *Jefferson*, 930 F.Supp. at 245 (same).

purchased it had the defect been known.[85] Where the defect does not render the item completely useless, but diminishes its value such that a buyer would have bought it but only at a lesser price, a buyer may obtain a reduction in the purchase price.[86]

Plaintiffs contend that their redhibition claims may survive summary judgment as they do not require a showing of physical injury.[87] Pfizer argues that plaintiffs did not make claims for redhibition in their complaints and may not assert it now to avoid summary judgment.[88] In any case, it maintains that there is no evidence that Rezulin was completely or substantially useless.

■ Plaintiffs asserted eight causes of action, including strict liability in tort, negligence, breach of implied warranty, negligent misrepresentation, fraud and deceit, and agent misrepresentation. There was no claim of redhibition. Moreover, even if the Court were to construe the plaintiffs' brief as a motion to amend the pleadings, such amendment would be futile.

Plaintiffs rely solely on expert reports as evidence that Rezulin was wholly or substantially useless. These reports, however, do not support the plaintiffs' contention. Two of the reports address the efficacy of Rezulin only in the most cursory way. Dr. Guerieguian argues that Rezulin "was less efficacious than other, safer diabetic medications already on the market," [89] and Dr. Wilson opines that Rezulin was effective in lowering blood sugar, but did so through an allegedly injurious mechanism.[90] Significantly, these reports assert that Rezulin was at least somewhat effective in lowering the blood sugar of diabetic individuals. Plaintiffs therefore have not put forth any evidence that Rezulin was completely or substantially useless.[91]

### Conclusion

For the foregoing reasons, Pfizer's motion for summary judgment [DI 1386] is granted dismissing the claims of Norman E. Toups, Jr. (*Ambuese,* 01 Civ. 6060); Eddie C. Lewis (*Marinello,* 01 Civ. 6062); Randall James Weaver (*Baker,* 01 Civ. 11878); Shirley Lee Murphy, Michael R. Banks (*Askew,* 02 Civ. 1719); Marilyn Campbell, Pamela Mickle (*Abudei,* 02 Civ. 1724); Mary Helen Freeman and Carolyn B. Lewis (*Birden,* 02 Civ. 9952).

SO ORDERED.

### Appendix
(Adapted from Defense Exhibit C, Filed in Response to PTO 274 and Revised February 15, 2005)

(**) Motion does not cover all plaintiffs named in the complaint.

| Applicable Action | Plaintiffs With Respect to Whom the Motion Was Withdrawn Without Prejudice |
| --- | --- |

**85.** La. Civ.Code Ann. Art. 2520.

**86.** *Id; see also Morris v. United Servs. Auto. Ass'n,* 756 So.2d 549, 560–61 (La.App. 2 Cir. 2000) (laying out the elements of a redhibition claim).

**87.** Gallagher Mem. 3.

**88.** Def. Gallagher Reply 5 n. 10.

**89.** Guerieguian Aff. ¶ 29(u).

**90.** Wilson Aff. 1/14/04 ¶ 6.

**91.** According to other experts retained by plaintiffs, Rezulin was effective for 95 percent of the patients who ingested it. *In re Rezulin Prod. Liab. Lit.,* 210 F.R.D. 61, 66 n. 37 (S.D.N.Y.2002).

| | |
|---|---|
| 00 Civ. 7632(**)<br>*Avon Armstrong, et al. v. Parke Davis, et al.* | Musgrove, Pamela Louise<br>Parker, Robert |
| 01 Civ. 0049(**)<br>*Lucille Burnworth, et al. v. Parke Davis, et al.* | Pate, Elvin Jr. |
| 01 Civ. 3560(**)<br>*Virdell Alford, et al. v. Parke–Davis, et al.* | Doaty, James E. |
| 01 Civ. 5763(**)<br>*Linnie Campbell, et al. v. Parke Davis, et al.* | Stephenson, Mary R. |
| 01 Civ. 5764(**)<br>*Barbara Autin, et al. v. Parke Davis, et al.* | Courville, Fred William<br>Jarman, Delores<br>Owens, Augustine H. |
| 01 Civ. 6053(**)<br>*Linda Babarie, et al. v. Parke Davis, et al.* | Bienemy, Jane Marie<br>Thomas, Danny C. |
| 01 Civ. 6054(**)<br>*Benjamin E. Ashby, et al. v. Parke Davis, et al.* | McClain, Leolar<br>Moses, Dorothy<br>Watson, Bessie |
| 01 Civ. 6056(**)<br>*Mildred Armstread, et al. v. Parke–Davis, et al.* | Armstread, Mildred<br>Brewer, Jewell Edgar Jr.<br>Perry, Martha Ann |
| 01 Civ. 6057(**)<br>*Nathaniel Banks, et al. v. Parke Davis, et al.* | Giroir, Barbara J. |
| 01 Civ. 6058(**)<br>*Catherine Allday, et al. v. Parke Davis, et al.* | Daigle, Claude Anthony Jr.<br>Gardiner, Charmaine Marie<br>Jenkins, Harry Thomas<br>Laundry, Marylou<br>Peterson, Soledad M.<br>Pinto, Carolyn Barbara |
| 01 Civ. 6059(**)<br>*Ricky Lynn Branch, et al. v. Warner–Lambert, et al.* | Trafficano, Michael Sr. |
| 01 Civ. 6060(**)<br>*Felician Ambuese, et al. v. Parke Davis, et al.* | Boden, George M.<br>Breaux, Jackie Michael<br>Chisley, Emma Lou<br>Danos, Shirley P.<br>Detillier, Timothy J.<br>Fletcher, Luvenia<br>Kennedy, Ronnie<br>Oncale, Gayle Ann<br>Pitre, Mary Kathleen<br>Thompkins, Elvina Jones |
| 01 Civ. 8159(**)<br>*Dawn Babineaux, et al. v. Parke–Davis, et al.* | DeRoche, Antoinette L.<br>Matherne, Sharon |
| 01 Civ. 10562(**)<br>*Dolares Marie Adams, et al. v. Parke Davis, et al.* | Bourg, Roy Joseph Jr.<br>DeHart, William Paul Jr.<br>Dupre, Augustin<br>Liner, Deanna<br>Liner, Morris T.<br>Owens, Janet Elaine<br>Pellegrin, Dorothy P.<br>Pitre, David Lee<br>Vizier, Carl Joseph |
| 01 Civ. 10563(**)<br>*Ernestine Abadine, et al. v. Parke Davis, et al.* | Abadine, Ernestine M.<br>Abadine–Ulysiss, Joseph Jr.<br>Berger, Lamera J.<br>Butler, Malcolm<br>Cole, E.L. Jr.<br>Cole, Shirley Denise |

Davis, Geraldine
Diggins–Booker Theodore Jr.
Duet, Lydia Mary
Dyer, Emelda O.
Gray, Gloria W.
Hughes, Shirley Mae
Jefferson, Shirley E.
Jenkins, Velma M.
Johnson–Sanders, Gale Marie
Lacour, Catherine Renia
Lee, Dorothy
Lemon, Karen Marie
Martin, Deborah M.
Mason, Gwendolyn
Payne, Jerome
Pierre, Celestine T.
Pierre, Mary Jones
Ruffin, Cecil
Shaw, Gloria Faye
Smith, Kevin D.
Taylor, Wendell Henry
Thompson, Edward
Weaver, Alice Brown
Williams, James E.

| | |
|---|---|
| 01 Civ. 10564(**)<br>*Darlene Accardo, et al. v. Parke Davis, et al.* | Aucoin, Barbara Wheeler<br>Antoine, Cornelius Curtis<br>Banks, David<br>Brocato, Linda Mae<br>Dandridge, Earl Sr.<br>Euwing, Janet R.<br>Grasso, Geraldine<br>Guidry, Ione<br>Kenney, Bessie W.<br>Leaycraft, Lucy Marie<br>Lee, Douglas<br>Lombas, Joyce Lee<br>Moshy, JoAnn<br>Parlow, Darryl<br>Prevost, Juanita M.<br>Seymore, Oradel<br>Simpson, Kenneth V.<br>Steele, William<br>Walther, Antoinette<br>Youker, Jacqueline Ann |